Joseph H. LEVIT, on behalf of himself
and all others similarly
situated, Plaintiff,

v.

FILMWAYS, INC., Defendant.

Civ. A. No. 80–586 CMW.

United States District Court,
D. Delaware.

Oct. 16, 1985.

Joseph A. Rosenthal, and Norman M.
Monhait, of Morris & Rosenthal, Wilmington, Del., Richard D. Greenfield, and Marcy C. Panzer, of Greenfield & Chimicles,
Bala Cynwyd, Pa.; and Paul M. Bernstein,
and Jeffrey A. Klafter, of Bernstein, Litowitz, Berger & Grossman, New York City, of
counsel, for plaintiff Levit and the Class.

Steven J. Rothschild, and Thomas J. Allingham, II, of Skadden, Arps, Slate,
Meagher & Flom, Wilmington, Del., for
defendant.

## MEMORANDUM OPINION

CALEB M. WRIGHT, Senior District
Judge.

Presently before the Court is the petition
of counsel for the plaintiff class for an
award of attorneys' fees and litigation expenses in connection with a compromise
and settlement of the class action. A hearing regarding the proposed settlement was
held on May 23, 1985 and the Court signed
an Order and Final Judgment approving
the settlement on May 30, 1985. At the
Court's request, however, the Order and
Final Judgment did not address the amount
of attorneys' fees that would be allowed,

because the Court wanted both additional information and an opportunity to study the fee petition more carefully before approving the fees set out therein. *See* Order and Final Judgment dated May 30, 1985 (Dkt. No. 92). The petition, filed on behalf of three law firms, seeks an award of fees in the amount of $183,750.00 and reimbursement for out-of-pocket expenses in the amount of $42,500.00. Both fees and expenses would be paid out of a common fund that will not exceed $525,000.00, but which could be considerably less depending on the number of claims submitted by class members.

The Court wishes to emphasize from the outset its conviction that plaintiff's attorneys have provided the class with legal services of a very high quality. Moreover, nothing said herein is meant to reflect adversely on the quality of those services. The Court, however, must address two difficulties before it can award the fees requested by plaintiff's counsel. First, the stipulation contains what has become a common practice in common fund cases— one that, to the Court's thinking is unfortunate—namely, the inclusion of a "clear sailing" provision. Secondly, there are inherent difficulties in applying the *Lindy* calculus for ascertaining reasonable attorneys fees to cases in which, through no fault of the attorneys, the ultimate settlement results in the creation of only a modest common fund for class members.

## I. THE UNDERLYING ACTION

This action was brought under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 for the alleged failure of the defendant, Filmways, Inc. (now called Orion Pictures), to make adequate and timely disclosures regarding the extent of the financial difficulties of its subsidiaries—American International Pictures, Union Fidelity Corporation, and Grosset & Dunlap Company—during a period between June 1, 1979 and December 5, 1980. In connection with its action, the plaintiff deposed numerous corporate officials of Filmways. Copies of seven of these depositions were filed with the Court prior to the settlement hearing held on May 23, 1985. As discovery proceeded, it became apparent to plaintiff's counsel that one aspect of the case did not involve a "garden-variety" form of non-disclosure, but rather was one that turned on an evaluation of certain accounting procedures. Plaintiff retained two highly qualified experts to assist in the preparation of their case: Manfred Seiden and James Hammerslough. Six weeks prior to trial, the parties entered into a stipulation of settlement creating a common fund with a potential value to class members of $525,000.

The ultimate recovery of the class was small when measured against plaintiff's initial claims. Nevertheless, the Court approved the settlement after giving careful consideration to the factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.1975). The Court's approval was largely based on its concurrence with the judgment of plaintiff's highly qualified counsel that the plaintiff's case suffered from an inherent weakness on the merits with respect to the issue of scienter. Thus, although the conclusion of the case could hardly be described as a success, it represented an outcome that was in the best interests of class members.

## II. THE TERMS OF THE SETTLEMENT AND ITS PROVISIONS FOR ATTORNEYS' FEES

The settlement provided that the plaintiff class consent to the dismissal of all its claims arising out of the transactions set forth in the complaint, with prejudice. In return, defendant agreed to deposit $525,000 in an escrow account for distribution to class members. The size of the fund was determined by multiplying a fixed price per share, 13.125¢, times an estimated four million shares on which claims could be made.

Although the funds distributed to class claimants could conceivably be as high as $525,000, the actual sum distributed could be considerably less under the provisions of the settlement. *See* Amended Stipulation and Agreement of Compromise and Settle-

ment, ¶¶ 1–4 (Dkt. No. 91). Because the settlement fixes only the amount available for distribution per share, the $525,000 figure is really only a ceiling on actual distribution. If less than the maximum number of claims are submitted, then the actual distribution will be smaller. Although the settlement provides that the amount fixed per share for distribution increases somewhat if substantially less than the maximum number of claims are submitted, the increase to members filing claims is not designed to offset fully the lost benefits to class members not filing claims.

The amount fixed per share for distribution stays at 13.125¢ so long as claims of more than two million shares are filed. If claims on less then two million shares are filed, then the price per share is gradually increased according to a formula to a maximum of 20¢ per share. This maximum is achieved when claims on less than 1,312,-500 shares are submitted. The effect of this provision is to lock in a sum of $262,-500 for distribution if the number of claims falls between 1,312,500 and two million shares. If claims of less than 1,312,500 are submitted, then the amount distributed would once again decrease.

Under the terms of the settlement, attorneys' fees are to be paid directly out of the funds available for distribution to shareholders rather than the funds actually distributed. The effect of this provision is to reduce the fixed amount per share that is paid out on each potential claim. In this way, the cost of counsel is borne by the entire class, that is, those members who actually did submit claims and those who could have, but have not done so.

## III. THE LINDY CALCULUS

The governing principles in determining a reasonable fee for class counsel in common fund cases are set forth in two Third Circuit decisions: *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.* (hereinafter *"Lindy I"*), 487 F.2d 161 (3d Cir.1973), and *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary*

*Corp.,* (hereinafter *"Lindy II"*), 540 F.2d 102 (3d Cir.1976) (en banc). In determining a reasonable fee, a district court must first consider the reasonableness of the number of hours spent and the hourly rate charged by counsel. By multiplying the number of hours reasonably spent times a reasonable hourly rate, the Court arrives at a "lodestar" figure. That "lodestar" figure is then adjusted to reflect two additional factors: the contingent nature of success and the quality of the attorneys' work.

### A. Calculating The Lodestar

Despite the seeming clarity of the *Lindy* calculus, giving flesh to the *Lindy* factors invariably involves the difficult task of having a district court weigh its own judgment of what are reasonable rates and time in the relevant legal community against the record with which it is presented. This task is especially difficult when the stipulation of settlement includes a "clearly sailing" clause. A "clear sailing" clause provides that defendant will agree not to object to plaintiff attorneys' fees below a stated amount so long as the fee comes entirely out of the common fund set aside for class members. The inherent dangers of such a clause were recently summarized in a concurring opinion of Judge Newman of the Court of Appeals for the Second Circuit:

A "clear sailing" clause has two adverse effects that cast substantial doubt on the legitimacy of its use. First, it deprives the trial court and a reviewing court of the certainty of having the propriety of the fee request tested in the adversary process. Sometimes, as in this case, objectors will come forward to challenge the reasonableness of the attorney's fee claimed by the plaintiffs, even when the fee is within the negotiated ceiling. But a "clear sailing" clause creates the risk that a fee request within the negotiated ceiling will not be challenged, placing upon the courts the burden of examining the basis for the fee, unaided by the challenges of an adversary party. *See Prandini v. National*

*Tea Co.*, 557 F.2d 1015, 1020–21 (3d Cir. 1977); *Foster v. Boise-Cascade, Inc.*, 420 F.Supp. 674, 678, 689 n. 8 (S.D.Tex.1976) (agreed upon fee), *aff'd.*, 577 F.2d 335 (5th Cir.1978) (per curiam). Second, the clause creates the likelihood that plaintiffs' counsel, in obtaining the defendant's agreement not to challenge a fee request within a stated ceiling, will bargain away something of value to the plaintiff class. It is unlikely that a defendant will gratuitously accede to the plaintiff's request for a "clear sailing" clause without obtaining something in return. That something will normally be at the expense of the plaintiff class. *See* A. Miller, *supra*, at 219–20.

*Malchman v. Davis*, 761 F.2d 893, 907–08 (2d Cir.1985), *cert. pending.*

The Court's ability to protect the interests of class members in determining what fee is reasonable is severely constrained to the extent that the Court is deprived of adversarial proceedings between plaintiff's counsel and defendant.

In this particular case, plaintiff's counsel has provided the Court with a wealth of uncontested information. Counsel has generated a brief biographical paragraph on each attorney associated with the case, a current billing rate for each attorney, the billable hours of each attorney, and a decomposition of each attorneys' billable hours into eight categories based on type of work. *See* Affidavit of Richard D. Greenfield (Dkt. No. 88); Affidavit of Edward A. Grossman (Dkt. No. 95); *See also* Appendix A (providing a detailed statement of hours billed and billable rates). Using this procedure plaintiff's counsel arrives at a lodestar figure of $288,378.75, based on 2190.65 hours. The Court has little reason to question the veracity of the historical record offered by counsel. Nevertheless, the Court is of the opinion that the hours expended and the billing rates are excessive.

■ While it is true that billing rates and time expended are generally questions of fact that must be determined from the record, *see Cunningham v. City of*

*McKeesport*, 753 F.2d 262, 263 (3d Cir. 1985), courts have somewhat wider latitude in determining what is reasonable in uncontested common fund cases. *Id.*, 753 F.2d at 267. Indeed, it has been suggested that "a neat compilation of dates and hours" is not sufficient to carry plaintiff counsel's burden of establishing the reasonableness of the fee requested. *Ursic v. Bethlehem Mines*, 719 F.2d 670, 676 (3d Cir.1983). Rather, counsel must offer additional evidence in calculating the lodestar to show *both* a reasonable hourly rate and a reasonable expenditure of time.

■ The present record contains some evidence to indicate that the billing rates are too high. First, an inordinate amount of time was spent on factual research. For example, the Greenfield & Chimicles firm spent nearly 1200 out of 1900 hours on fact research. This appears excessive in light of the fact that the Court's record consists of only eight depositions running about 1400 pages in length (plaintiff's counsel indicated at oral argument that a few other depositions were taken but were not filed). Moreover, most of the depositions involved a discussion of related facts regarding a limited set of transactions for Filmways. The interrogatories contained in the record should not have required a sizable expenditure of time on the part of plaintiffs. Finally, plaintiff's counsel had the assistance of two experts in sifting through the facts relating to accounting issues.

It is not clear how the Court's finding of excessive time spent on fact discovery should be translated into the lodestar calculation. One possibility is to reduce the billable rate for the inordinate time expended in managing the facts in this case. *See Ursic v. Bethlehem Mines, supra*, 719 F.2d at 677; *cf. Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Alternatively, the Court could consider an outright reduction in the compensable hours of the attorneys involved. The combination of a reduction in billable rates and hours, however, would amount to abuse of the Court's discretion. *See In re*

*Fine Paper Antitrust Litigation,* 751 F.2d 562, 599 (3d Cir.1984).

Accordingly, it is the considered judgment of this Court that, with respect to time expended on discovery, the billable rate of Richard Greenfield should be reduced by fifty dollars an hour to a rate of $190 per hour, the billable rate of Donald Lewis should be reduced by forty dollars an hour to a rate of $135 per hour, and the billable rate for the paralegal, Edward Granski, should be reduced by twenty dollars an hour to $35 an hour. Plugging these changes into the lodestar calculation results in a $34,325 reduction in the lodestar to Greenfield & Chimicles, leaving the lodestar total at $254,053.75.

Plaintiff counsel's use of current billing rates instead of historic billing rates also unjustifiably inflates counsel's lodestar. Despite the Court's informal request for information regarding historic billing rates, the information has not been forthcoming. Instead, counsel relies on the argument that use of current billing rates offers an implicit method of correcting for the ravages of inflation. Despite the surface appeal of such an argument, closer examination reveals its inadequacies. First, there is no reason not to make an explicit adjustment for inflation if one is to be made. The Court is deprived of any opportunity to verify that adjustments made for inflation are appropriate unless the adjustments are explicit. Secondly, to the extent that billing rates reflect both inflation and accumulated years of experience, current billing rates are likely to overestimate any necessary correction for inflation. The Court suspects, however, that recalculating the lodestar using historic billing rates would not produce a dramatic change in the final lodestar. In view of its determination in the next section, the Court will not insist on obtaining supplemental affidavits from counsel.

In allowing plaintiff counsel's remaining billable rates and hours expended to stand, the Court wishes to emphasize that its approval does not reflect a finding by the Court that the rate charged and time expended are as a matter of law inherently reasonable; rather, the Court's finding today stems solely from the absence of any evidence to the contrary from which the Court could draw an adverse inference.

### B. *Adjusting The Lodestar*

Plaintiff's counsel has taken the position that its lodestar should be reduced by a negative multiplier of approximately 62%. This would yield a fee request of $183,750, which represents about 35% of the $525,000 fund available for claimants. What is striking about counsel's request is its radical departure from any reliance on factors set forth in *Lindy I & II* regarding adjustment of lodestars.

Taken at face value, plaintiff counsel's lodestar calculation amounts to 55% of what is available for recovery. This was obviously too high. The problem, however, is how to reconcile this common sense intuition with *Lindy II* which sets forth a rather specific list of factors that justifies adjusting the lodestar. *Lindy II,* 540 F.2d at 116–118.

Contingent nature of success is one of the major factors for courts to consider. The significance of this factor is determined by a number of lesser factors such as complexity, probability of liability, probability of damages and an evaluation of risk assumed based on resources expended. By its very nature, however, contingency can only support a positive adjustment to the lodestar and never a negative multiplier. This follows from the fact that in the absence of any risk (or alternatively contingency), there should not be an adjustment (let alone a negative one) to the lodestar. At best, counsel could argue that settling a federal securities case for a low sum is a virtual certainty whenever the pleadings contain allegations involving genuine issues of material fact.

■ The other major factor that affects adjustment of the lodestar is the "extent, if any, to which the quality of an attorney's work mandates increasing or decreasing the amount to which the court has found

the attorney reasonably entitled." *Lindy I*, 487 F.2d at 168. The lesser factors subsumed under the quality adjustment are the relative benefits conferred on class members, i.e., the potential value of claims measured against the actual value of settlement, the benefit to the class as a whole, and overall efficiency in managing the lawsuit. These factors clearly open up the possibility of a negative multiplier. *See, e.g., In re Fine Paper Antitrust Litigation*, 751 F.2d 562, 600–601 (3d Cir.1984).

▮ Plaintiff counsel's petition glosses over the precise basis on which to predicate the reduction of its lodestar. Indeed, the section on quality in counsel's petition is obviously taken from a canned brief in which the word "negative" has been substituted for the word "positive". This is evident from the arguments which uniformly support a positive, rather than a negative, multiplier. For example, despite counsel's assertion of their skill and efficiency, they conclude that a negative multiplier is not unreasonable. Moreover, in some places, counsel neglected to substitute "negative" for "positive", so that at crucial points, the argument expressly justifies a positive multiplier rather than a negative one.

The failure of plaintiff's counsel to justify the reason for a reduction in its lodestar does not preclude this Court from following the attorneys' suggestion. The Court, however, feels that the reduction should be accompanied by a meaningful explanation rather than rest on an edifice of brute assertion. The approach of plaintiff's counsel reflects the common sense result that the time-rate method of determining attorneys' fee mandated by *Lindy I & II* should not be used as an instrument for providing plaintiff's counsel with compensation in excess of what would be earned on a strict contingency (percentage-of-recovery) basis. In this case, plaintiff's counsel reached the result by reducing the lodestar by an arbitrary 38%. Only after this arbitrary reduction in the lodestar does the fee request bear any resemblance to a contingent fee arrangement.

Applying a percentage-of-recovery standard in common fund cases where the lodestar greatly exceeds the benefit to the class is not entirely inconsistent with *Lindy I & II*. The time-rate standard mandated by *Lindy I* was meant to redress abuses in fee awards created by using a percentage-of-recovery standard. *See generally* A. Miller, *Attorneys' Fees in Class Actions* 21–33 (Federal Judicial Center 1980). No possibility of such abusive practice exists when a contingent fee is less than counsel's adjusted lodestar. Moreover, *Lindy II* and subsequent Third Circuit decisions have emphasized the need for some correlation between "hours worked" and "total recovery". *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir.1983). Finally, applying contingent fee concepts in the special circumstances outlined here would not obviate the need for calculating an adjusted lodestar. Only if the adjusted lodestar exceeds what would have been earned on a contingency basis should a court resort to a percentage-of-recovery standard, and then, only when other factors do not militate against its use.

Resort to a contingent fee standard entails its own difficulties, most notably how to determine the appropriate contingent fee. Of the several possibilities that come to mind, the Court finds that an award of one-third of the difference between the common fund and the litigation expenses is the most appropriate. Expenses should be subtracted from the common fund directly for two reasons. This technique provides counsel with the proper incentives in incurring expenses: at the margin, an additional dollar of expense costs counsel one-third of a dollar and an additional dollar's benefit arising from the expenditure of a dollar produces one-third of a dollar in fees for class attorneys. In addition, by subtracting expenses off the top, firms working on the same side of a case have a greater incentive to monitor the expenses of the other firms since expenses incurred by one firm lead to a one-third of a dollar of reduction in the pool of fees for other firms.

In this case, counsel has already notified the class that expenses will not exceed

$42,500. Thus, although counsel actually incurred $53,170.59 in expenses, the lower figure will be used. The total amount available to the class as a whole is $525,000 and after expenses, $482,500 remains. One-third of this figure is $160,833.33. This is the amount that will be awarded in attorneys' fees in this case.

## APPENDIX A

### GREENFIELD & CHIMICLES

| ATTORNEYS | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| Richard D. Greenfield | 447.25 | $240. | $107,340.00 |
| Nicholas E. Chimicles | 5.00 | $195. | $    975.00 |
| Donald B. Lewis | 265.25 | $175. | $ 46,418.75 |
| Robert P. Frutkin | 1.00 | $170. | $    170.00 |
| Susan S. Thomas | 69.00 | $125. | $  8,625.00 |
| Marcy C. Panzer | 577.75 | $ 90. | $ 51,997.50 |
| Edward Granski | 505.50 | $ 55. | $ 27,802.50 |
| | | | $243,328.75 |

### MORRIS & ROSENTHAL, P.A.

| ATTORNEYS | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| Joseph A. Rosenthal | 6.7 | $150. | $1,005.00 |
| Norman M. Monhait | 55.9 | $125. | $6,987.50 |
| Kevin E. Walsh | 0.8 | $ 60. | $   60.00 |
| | | | $8,052.50 |

### BERNSTEIN, LITOWITZ, BERGER & GROSSMANN

| ATTORNEYS | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| Paul M. Bernstein | 68.50 | $260. | $17,810.00 |
| Jeffrey A. Klafter | 94.50 | $135. | $12,757.50 |
| Daniel L. Berger | 6.50 | $135. | $   877.50 |
| Gene Kleinhendler | 60.25 | $ 75. | $ 4,518.75 |
| PARALEGALS | | | |
| Genie Principe | 10.25 | $ 45. | $   461.25 |
| Teri Miskowicz | .50 | $ 45. | $    22.50 |
| Karen Urbano | 2.00 | $ 30. | $    60.00 |
| Sylvia Steinert | 14.00 | $ 35. | $   490.00 |
| | | | $36,997.50 |

### OUT–OF–POCKET EXPENSES

### GREENFIELD & CHIMICLES

| TYPE OF EXPENSES | EXPENSE CODE | TOTAL AMOUNT |
|---|---|---|
| Photocopying (Firm) | 1 | $ 2,141.25 |
| Excess Postage | 2 | $   253.52 |
| Telephone | 3 | $ 1,049.73 |
| Travel, Food & Lodging | 4 | $ 7,786.03 |
| Miscellaneous Client Expense | 5 | ------------- |
| Filing Fees | 6 | $    60.00 |
| Deposition Transcripts | 7 | $ 1,823.11 |
| Courier Service | 8 | $   576.22 |
| Outside Photocopying | 9 | $ 2,645.37 |
| Subpoena Witness Fees | 10 | $   120.00 |
| Clerical Overtime | 11 | $ 2,424.74 |
| Publications | 12 | $    22.00 |

| TYPE OF EXPENSES | EXPENSE CODE | TOTAL AMOUNT |
|---|---|---|
| Transportation | 13 | ------------ |
| Expert Witness Fees | 14 | $27,687.00 |
| Assessments | 15 | ------------ |
| Nominee Reimbursement | 16 | $ 3,643.31 |
| Lexis Research | 17 | ------------ |
| TOTAL | | $50,232.28 |

| | KRIENDLER & KRIENDLE | BERSTEIN, LITOWITZ BERGER & GROSSMANN | TOTAL |
|---|---|---|---|
| Travel, Meals & Lodging | $937.45 | $ ------- | $ 937.45 |
| Telephone | $ 88.97 | $ 87.28 | $ 176.25 |
| Postage/Express Mail | $ 87.94 | $ 49.86 | $ 137.80 |
| Photocopy | $541.16 | $ 30.93 | $ 572.11 |
| Court Reporters/ Transcripts | $ 95.00 | $ ------- | $ 95.00 |
| Transportation | $ 22.35 | $ 15.30 | $ 37.63 |
| Messengers | $ 54.05 | $ 50.70 | $ 104.75 |
| Lexis | $409.60 | $ ------- | $ 409.60 |
| Books, Publications & Quotes | $ 56.70 | $ ------- | $ 56.70 |
| Court Fees/Subpoena Fees | $ 36.00 | $375.00 | $ 411.00 |
| TOTAL | | | $ 2,938.31 |
| COMBINED TOTAL | | | $53,170.59 |