## Rosalind WELLS

v.

## DARTMOUTH BANCORP, INC., Daniel G. Edgar, Elliot Bendrihem, and Raymond E. Closson.

### Civ. No. 89–543–M.

United States District Court, D. New Hampshire.

Feb. 19, 1993.

Karen L. Morris, Wilmington, DE, Joseph H. Weiss, New York City, Lucy J. Karl, Manchester, NH, Mark Levin, New York City, for intervenor plaintiff.

Peter S. Cowan, Manchester, NH, Irvin D. Gordon, Concord, NH, Gordon P. Katz, Boston, MA, John C. Englander, Boston, MA, Dennis G. Bezanson, South Portland, ME, for defendants.

## ORDER

McAULIFFE, District Judge.

Pending before the Court is the Joint Application of Plaintiff's Counsel for Award of Attorneys' Fees and Reimbursement of Expenses (document no. 114), by which counsel for the plaintiff and the Class have petitioned the Court for an award of attorneys' fees in the amount of $275,000.00 to be paid from the Dartmouth Bancorp Litigation Settlement Fund (the "Settlement Fund"). The Settlement Fund is a $1 Million account established to fund the settlement of this litigation. Petitioning counsels' request for attorneys' fees represents 27.5 percent of the gross recovery in this litigation. Additionally, petitioning counsel seek reimbursement for litigation expenses incurred in the amount of $136,828.67, together with accrued interest on such amount while in the Settlement Fund. Taken together, petitioners seek attorneys' fees and expenses in excess of forty-one percent of the gross recovery. If one then considers that, based upon the affidavit of Mark Levine, Esq. (document no. 129), the cost to administer the Settlement Fund will be approximately $41,-500.00, over forty-five percent of the Settlement Fund would go to parties *other* than the members of the Class.[1] Before endorsing such a plan, the Court owes the Class a careful review of petitioners' request.

*Standard of Review.*

Fed.R.Civ.P. 23(e) provides that, "A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the Class in such manner as the court directs." Although the rule does not explicitly address the oversight of fee applications, the approval function has routinely been extended to embrace fees. *Weinberger v. Great Northern Nekoosa Corp.,* 925 F.2d 518, 523 (1st Cir.1991). And, as the First Circuit Court of Appeals has noted, "The difficulty for both fee-setting and fee-reviewing courts, in a field so susceptible to arbitrariness, is the achievement of decision-making that is fair to the parties and understandable to the community at large yet not unnecessarily burdensome to the courts themselves." *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 950 (1st Cir. 1984). The ultimate goal to be achieved by the reviewing court is to award fees which are adequate to attract competent counsel

---

**1.** This does not take into account the tax liabilities, if any, that will be incurred by the individual members of the Class as a result of this settlement.

and yet not so large that they result in a windfall. *Id.* at 950.

When, as here, few if any beneficiaries (who actually pay the attorneys' fees) are before the Court when appropriate fees are determined, the Court must be particularly vigilant to ensure that such fees are reasonable.

> Judicial scrutiny is necessary inasmuch as the fee will be paid out of the fund established by the litigation, in which the defendant no longer has any interest, and the plaintiff's attorney's financial interests conflict with those of the fund beneficiaries. As a result, there is no adversary process that can be relied upon in the setting of a reasonable fee.

*Court Awarded Attorney Fees*, Report of the Third Circuit Task Force, 108 F.R.D. 237, 251 (1985). Once counsel petition the Court for a portion of the common fund as compensation for their efforts, their role changes from that of fiduciary for their clients to that of a claimant against the fund created for their clients' benefit. In this zero sum game, each additional dollar awarded to counsel reduces the amount available to the Class members by an equal amount. And, as cogently noted by the court in *Purdy v. Security Savings & Loan Association*, 727 F.Supp. 1266 (E.D.Wis.1989):

> Defendants, having made their contribution to the settlement, are uninterested in the distribution, so (as in this case) they typically do not offer any opposition to the fee petition. It is, therefore, incumbent upon the trial court to become the fiduciary for the fund's beneficiaries and to act with "moderation and a jealous regard to the rights of those who are interested in the fund" in determining what is a reasonable fee to be paid to class counsel for their efforts in settling the litigation and creating the fund.

*Id.* at 1268–69 (citations omitted).

*Out-of-Pocket Expenses.*

■ In support of their request for reimbursement for out-of-pocket expenses, petitioning counsel have submitted several affidavits, attesting to the accuracy and reasonableness of the expenses for which reimbursement is sought. The most substantial of these expenses relates to the accounting services of Rosenwald & Bildstein, Certified Public Accountants. Of the $136,828.67 of expenses for which counsel seek reimbursement, $116,012.00 represent the professional fees and disbursements charged by Rosenwald & Bildstein.

According to the unchallenged affidavit of Bernd Bildstein, it appears that, among other things, Rosenwald & Bildstein resuscitated this litigation after defendants ultimately prevailed upon the Court to dismiss the original complaint for failure to state a claim for securities laws violations and failure to allege fraud with particularity. Specifically, Mr. Bildstein states:

> In September 1990, after the Court had dismissed the original complaint herein for failure to state a claim for securities fraud and for failure to plead fraud with particularity, deponent, working closely with counsel, marshalled all the factual information accumulated to date and assisted counsel in preparing the amended class action complaint. As a result of deponent's reviews and analyses of Dartmouth's and Peat's documents, the amended complaint expanded the class and added substantial factual specificity concerning the allegations. Deponent spent 75½ hours on this phase. Deponent believes that the document analysis developed would have overcome any new claim by defendants that the complaint did not meet the specificity requirement of Rule 9(b) of the Federal Rules of Civil Procedure.

Affidavit of Bernd Bildstein, dated January 25, 1993, ¶ 18.

Based upon Mr. Bildstein's affidavit, and in light of the complexity of the analysis in which his firm engaged and the necessity of such analysis to the success of this litigation, the Court finds that such accounting fees were reasonable and necessary. With respect to the approximately $30,000.00 of other expenses, the Court finds that, based upon the information before it, such expenses were reasonable and necessary and that petitioning counsel are entitled to reimbursement.

*Attorneys' Fees.*

 In assessing the reasonableness of attorneys' fees, courts have relied upon two forms of analysis: the "lodestar" approach and the "reasonable percentage of the common fund" approach. In *Weinberger, supra,* the court recognized, "the tendency exhibited by some courts, particularly in common fund cases, to jettison the lodestar in favor of a 'reasonable percentage of the fund' approach." *Weinberger,* 925 F.2d at 526 n. 10. This Court is persuaded that in securities law class actions such as this, the more appropriate means by which to ensure that attorneys' fees are reasonable, and expenses are minimized, is generally to employ the "reasonable percentage of the fund" approach. Petitioning counsel concurs and seeks 27.5 percent of the gross settlement fund; counsel have not requested that the Court employ the lodestar method to determine appropriate fees.

Nevertheless, the Court recognizes that resort to the "percentage of the fund" approach entails its own difficulties, primarily related to determining the appropriate percentage of the fund to award to counsel. As noted earlier, counsel for the Class seeks an award of 27.5 percent of the gross settlement. There is nothing intrinsically significant about 27.5 percent. As justification for this figure, petitioning counsel note that, "This percentage is less than the 30% which Class members were informed plaintiff's counsel might seek in the Notice of Settlement Hearing." Joint Application of Plaintiff's Counsel for Award of Attorneys' Fees at 1–2. Implicit in this statement is the assertion that if no member of the Class objected to a proposed award of 30 percent, surely no one would complain if the Court ordered an award of 27.5 percent. While the argument has a certain appeal, the Court remains unpersuaded that the assumptions underlying it are reliable.

In a class action suit, participating Class members generally assume no monetary risk in the outcome of the litigation. Any distribution to a Class member is usually more than that member might have been able to recover on his or her own, as a practical economic matter. In this context, it is not surprising that no one objected to a proposed award to petitioning counsel of 30 percent of gross recovery. However, mere absence of objections ought not to earn the imprimatur of a reviewing Court. Further inquiry is necessary.

 While the Court is willing to grant petitioning counsel 30 percent of the funds recovered on behalf of the Class, attorneys' fees shall be paid only *after* all administrative costs and out-of-pocket expenses have been paid. In a well-reasoned opinion, the District Court for Delaware stated the justification for this approach:

> Expenses should be subtracted from the common fund directly for two reasons. This technique provides counsel with the proper incentives in incurring expenses: at the margin, an additional dollar of expense costs counsel one-third of a dollar and an additional dollar's benefit arising from the expenditure of a dollar produces one-third of a dollar in fees for class attorneys. In addition, by subtracting expenses off the top, firms working on the same side of a case have a greater incentive to monitor the expenses of the other firms since expenses incurred by one firm lead to a one-third of a dollar of reduction in the pool of fees for other firms.

*Levit v. Filmways, Inc.,* 620 F.Supp. 421 (D.C.Del.1985). In the absence of a truly adversarial situation regarding the establishment of attorneys' fees, the Court believes that this approach is the most reasonable, prudent and appropriate.

The Court is not oblivious to the awkwardness of the position in which petitioning counsel find themselves. On one hand, counsel must, at a minimum, acknowledge the infirmities of their case in order to justify settlement. So, for example, counsel concede that:

> If the case had not been settled, the defendants' impending motions to dismiss, for reasons similar to those on which they moved to dismiss the original complaint, might have succeeded at least in part. No doubt they would have

tracked the numerous holdings in this Circuit and in district courts within this Circuit that have found that claims for securities fraud against banks and their officers and directors amounted to, at most, mere mismanagement and were not actionable. Plaintiff's Memorandum of Law in Support of Proposed Settlement at 3–4. Later, however, in order to support their request for fees and reimbursement of expenses, counsel must emphasize the merits of the cases and the tremendous amount of expert work required to pursue it. Taking into account all available facts, the Court is satisfied that its resolution of this matter is fair, reasonable and equitable. It is also entirely consistent with the desire of the community to award fees which are adequate to attract competent counsel and yet not so large as to result in a windfall.

Based upon the pleadings and supporting affidavits submitted by petitioning counsel, the Court finds that the settlement fund and allowed costs, fees and expenses break down as follows:

| | |
|---|---|
| Settlement Fund | $1,000,000.00 |
| Expenses Incurred | ($ 136,828.67) |
| Settlement Administration | ($ 41,542.28) |
| Award to Named Plaintiff | ($ 3,500.00) |
| Net Recovery for Class | $ 818,129.05 |

Petitioning counsel shall be awarded $250,000.00, which amounts to slightly more than 30 percent of the net recovery for the Class. In a case in which plaintiff took no depositions, extensive trial and witness preparation was unnecessary, and a great deal of the substantive analysis and review of defendants' records was conducted by the expert accountants, a quarter of a million dollars in fees is both reasonable and just. This figure represents fair and adequate compensation to petitioning counsel for the services provided, the expertise required, the risk assumed and the result obtained.

SO ORDERED.

## FINAL ORDER AND JUDGMENT

This proceeding (the "Litigation") is an action brought by the Plaintiff, Rosalind Wells (the "Plaintiff" or "Wells"), individually and as representative of all class members (as hereinafter defined) against defendants, Dartmouth Bancorp, ("Dartmouth Bancorp"), Daniel G. Edgar, Elliot Bendrihem and Raymond E. Closson (said individuals sometimes referred to collectively as the "Individual Defendants") (Dartmouth Bancorp and the Individual Defendants sometimes being collectively referred to as the "Defendants").

Pursuant to the Stipulation of Settlement (the "Stipulation"), dated May 22, 1992, and this Court's Order dated May 28, 1992, all purchasers of Dartmouth Bancorp common stock during the period from February 10, 1989 through January 22, 1990, were certified as Class Members in connection with the Litigation. (Excluded are Dartmouth Bancorp, its affiliates and subsidiaries, the Individual Defendants, the officers and directors of Dartmouth Bancorp during the Class Period and members of the immediate family of each of them.) The Plaintiff, acting on behalf of herself and the Class, has entered into the Stipulation and has applied to this Court for approval of the Stipulation and the terms thereof pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

On May 28, 1992, an Order With Respect to Class Notice, Settlement Hearing, and Administration was entered by this Court. That Order certified the Class for settlement purposes only and directed that notice be given to the Class of the proposed Settlement and of a hearing (the "Settlement Hearing") to determine whether the proposed Stipulation and Settlement should be approved as fair, adequate and reasonable, to fix fees, costs and expense reimbursements of Plaintiff's counsel, to consider an Individual Award to the Plaintiff, and to hear any objections thereto.

The Settlement Hearing was held, following adjournment, on January 21, 1993. Prior to the Hearing, proof of notice, as directed in said order; was presented and filed. Members of the Class were given the opportunity to file Requests for Exclusion from the Class on or before August 12, 1992, and a sworn statement listing the persons who have timely filed such Re-

quests for Exclusion has been filed with the Court. Members of the Class were also notified of their right to appear at the Settlement Hearing in support of or in opposition to the proposed Settlement, award of fees, reimbursement of expenses and the other matters before the Court.

The Court having heard Mark Levine, Lead Counsel for the Class, on behalf of the Plaintiff and the Plaintiff Class, and Gordon P. Katz, on behalf of the Defendants, and having reviewed all of the submissions presented with respect to the proposed Settlement, and the Court having determined that the Settlement is fair, adequate and reasonable, and having considered the Petition of Plaintiff's Counsel for awards of fees, costs and expense reimbursements and the affidavits, schedules and exhibits submitted in support thereof, and having considered the applications of the Plaintiff for an individual award, it is hereby:

ORDERED, ADJUDGED AND DECREED THAT:

1. This Court has jurisdiction over the subject matter of the Litigation and over all parties to the Litigation, including members of the Class as defined in this Court's order of May 28, 1992, and this Litigation has been and is certified as a class action on behalf of all purchasers during the Class Period of February 10, 1989 to January 22, 1990 of the common stock of Dartmouth Bancorp (excluding Dartmouth Bancorp, its affiliates and subsidiaries, the Individual Defendants, the officers and directors of Dartmouth Bancorp during the Class Period and members of the immediate family of each of them). Notice to the Class required by Rule 23(e) of the Federal Rules of Civil Procedure has been given in accordance with Rule 23(e) and in an adequate and sufficient manner, constituting the best notice practicable under the circumstances, complying in all respects with such Rule and due process, including, but not limited to, the forms of notice and the methods of identifying and giving notice to the members of the Class.

2. The members of the Class ("Class Members") are as described above, excluding all persons who timely filed a request to be excluded form the Class, pursuant to Rule 23(c)(2) of the Federal Rules of Civil Procedure. A list of all persons who filed such a Request for Exclusion is annexed hereto and incorporated by reference herein.

3. The Settlement of the Litigation, as set forth in the Stipulation of Settlement dated May 22, 1992, is hereby approved, and the Court finds that the settlement is, in all respects, fair, reasonable and adequate to the Plaintiff and the members of the Class.

4. The Plaintiff, Class Members, and the Defendants shall consummate the Settlement according to the terms of the Stipulation.

5. The persons referred to in Paragraph 2 hereof who requested exclusion from the Class shall not participate in the proceeds of the Stipulation hereby approved or receive any benefit thereunder. All persons who have not requested exclusion from the Class are permanently barred and enjoined from prosecuting any action, brought by or on behalf of a class, which in any way relates to or arises out of any Settled Claim or any of the wrongs alleged in the Litigation.

6. The Court hereby dismisses on the merits, with prejudice and without costs, with each party to bear its own attorneys' fees and costs and expenses (except as awarded in this Order), each and all of the Settled Claims (as hereinafter defined) against each and all of the Defendants (as hereinafter defined). The Defendants are collectively Dartmouth Bancorp, Inc., Daniel G. Edgar, Elliot Bendrihem and Raymond E. Closson, in each and every capacity in which such persons acted, may have been alleged to have acted, or might be alleged to have acted, together with any and all of their predecessor or successor corporations, trusts or partnerships, any and all parent corporations, trusts or partnerships, all wholly or partially-owned subsidiary banks or corporations, trusts or partnerships, and any and all of the above persons' or entities' present, future and former directors, trustees, officers, agents,

shareholders, employees, attorneys, accountants, insurers, joint venturers, partners, principals, personal representatives, heirs, executors, administrators, predecessors, successors or assigns. The Settled Claims are any and all claims, cross-claims, demands, rights, actions and causes of action, of whatever nature, character or description, whether class, derivative, direct, representative or individual in nature, known or unknown, foreseen or unforeseen, concealed or hidden, which have been, could have been, or might in the future be, asserted by the Plaintiff or any Class Member or their respective agents, heirs, executors, administrators, successors, and assigns, or any of them, against any of the Defendants, as defined in the second sentence of this paragraph, in connection with, arising out of, raised in, or relating in any way to: (a) the Litigation; (b) any acts, failures to act, omissions, misrepresentations, statements, misstatements, predictions, estimates, projections, forecasts, facts, events, transactions, occurrences or other subject matters set forth, alleged, embraced, encompassed, or otherwise referred to in or underlying the Litigation, including but not limited to, any claims relating to the purchase or sale of stock of Dartmouth Bancorp, the dissemination of or failure to disseminate information regarding the business or financial condition, or anticipated business or financial condition, of Dartmouth Bancorp, Dartmouth Bancorp's loan underwriting and credit management procedures (including, but not limited to, its identification of non-performing or partially performing loans), the quality of Dartmouth Bancorp's loan portfolio, the adequacy of Dartmouth Bancorp's provisions made for possible loan losses, the integrity of Dartmouth Bancorp's loan management and workout procedures, the accuracy of Dartmouth Bancorp's financial statements, or of any public statements or representations, oral or written, made by any Defendant relative to the above; or (c) any and all claims or cross-claims for violations of federal, state, common, or other law arising from such subject matters. For purposes of this paragraph, Dartmouth Bancorp shall mean Dartmouth Bancorp and all of its affiliates and subsidiaries.

7. Each and all of the Defendants are forever released and discharged from each and all of the Settled Claims, and each and all of the Settled Claims are hereby extinguished.

8. Except for an appeal from this Order, the Plaintiff and each and every Class Member (other than those who properly excluded themselves from the Class), are permanently and forever barred and enjoined from: (1) asserting, either individually or on behalf of a class, against any of the Defendants, any Settled Claims, or prosecuting, either directly or indirectly, either individually or on behalf of a class, any action in any jurisdiction against each and all of the Defendants based on the Settled Claims or any claims or causes of action arising out of or related to the Settled Claims or the Litigation; and (2) instituting or prosecuting against any other party any claim, demand or cause of action, whether class or individual, arising out of or related to the Litigation or the Settled Claims.

9. Upon the Settlement Effective Date, as defined in the Stipulation, Gordon P. Katz, Esq. or his successor, shall resign as an Escrow Agent and shall be released from any further obligation or liability with respect to the Dartmouth Bancorp Litigation Fund and the Settlement Administration Fund, and Mark Levine, Esq. or his successor shall deliver the proceeds of the Dartmouth Bancorp Litigation Fund to the Settlement Administration Fund and, upon such delivery, shall be released from any further obligations or liability with respect to the Dartmouth Bancorp Litigation Settlement Fund.

10. Plaintiff's Counsel are hereby awarded attorneys' fees in the amount of $250,000.00 and reimbursement of expenses of $136,828.67, to apportion such amount among themselves and the other class counsel as Lead Counsel for the Class deems appropriate, such amounts to be paid from the Net Settlement Fund upon the Settlement Effective Date, together with accrued interest on such amounts.

Plaintiff Rosalind Wells is awarded the sum of $3,500.00 as an incentive award.

11. Without affecting the finality of this judgment, jurisdiction is hereby retained as to all matters related to administration and consummation of the Settlement hereby approved.