**Joe H. HUBBERT, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 99–396L.**

United States Court of Federal Claims.

Sept. 10, 2004.

---

William J. Travis and William C. Dunning, Greensfelder, Hemker & Gale, P.C., St. Louis, Missouri, for plaintiffs.

William J. Shapiro, U.S. Department of Justice, Environment & Natural Resources Division, and Thomas L. Sansonetti, Assistant Attorney General, for defendant. Evelyn Kitay, Surface Transportation Board, of counsel.

### ORDER ON ATTORNEY FEES AND EXPENSES AND DIRECTING FINAL JUDGMENT

BRUGGINK, Judge.

This class action involves a suit by persons seeking compensation for the imposition of an easement for recreational trail use on their land. In a related case, we ruled that the government's enactment of the Rails–to–Trails Act[1] constituted a compensable taking. *Glosemeyer v. United States*, 45 Fed.Cl. 771 (2000). Subsequently we granted defendant's motion for summary judgment as to seven of the thirty claimants.[2] We denied plaintiffs' cross-motion for partial summary judgment as to three of those claims.[3] *Hubbert v. United States*, 58 Fed.Cl. 613 (2003). Later, two plaintiffs were dismissed voluntarily.[4] Thereafter, on July 14, 2004, the parties filed a stipulation as to the amount of compensation for remaining claimants. We adopted that stipulation on July 28, 2004, but deferred entry of judgment pending resolution of plaintiffs' claim for attorney fees and expenses. The present order addresses that issue. Plaintiffs' current claim, as supplemented, is for a total in fees and expenses of $103,036.18. Defendant opposes any award in excess of $48,267.59. We deem oral argument to be unnecessary. For reasons set out below, we award $64,973.92, in addition to the amount previously stipulated as compensation.

---

1. Pub.L. 98–11, 97 Stat. 48, amending the National Trails System Act, Pub.L. 90–543, 82 Stat. 919 (codified, as amended, at 16 U.S.C. § 1241 et seq. (Supp. II 1996)).

2. Claim Nos. 3, 12, 16 (in part), 18, 19, 21, and 29. Claim No. 16 is supported by two deeds, one dated August 19, 1884, and another dated April 18, 1884. Defendant argues, and plaintiffs concede, that the August 19 deed conveyed a fee interest to the Railway.

3. Claim Nos. 3, 21, and 29.

4. Claims 5 and 14.

## BACKGROUND

■ Successful plaintiffs in a takings action are entitled to recover "reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred," pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 ("URA"), 42 U.S.C. § 4654(c) (2002).[5] In this case, twenty-two individuals will recover a total of $238,639.89, which represents compensation and interest. The amounts are calculated, as set out in the stipulation, based on the size of the parcel in each claim. Nine of the original claimants were unsuccessful.[6]

■ Defendant has not challenged the bona fides of any particular item in plaintiffs' request, nor has it challenged the hourly rate for fees. Instead, it seeks to limit the recovery to fees and expenses incurred after June 24, 2003. On that date, defendant attempted to make an offer of judgment pursuant to Fed. Cl. R. 68. Defendant offered to settle for the principal amount of $185,000. More than half of plaintiffs' fees and presumably an equal proportion of expenses are dated after that offer. The offer was made prior to the court's ruling in December 2003 which resulted in dismissal of seven claims. The principal amount of compensation eventually agreed to in the parties' settlement is $150,610. The balance is interest. Defendant argues that, because the offer of judgment was greater than the ultimate settlement, plaintiffs should not recover for fees or expenses incurred after June 24, 2003.

Plaintiffs responded to the offer by questioning its form. Defendant offered a lump sum amount for all plaintiffs, without differentiation. Plaintiffs insisted that, to be effective, the offer had to itemize the recovery for each plaintiff. Defendant concedes that the

question of the form of the validity of the offer is not without doubt. *See Gavoni v. Dobbs House, Inc.,* 164 F.3d 1071 (7th Cir. 1999). It also concedes that, on its face, Rule 68 only addresses the shifting of *defendant's* costs and fees. Only by implication does the rule suggest that a plaintiff who unwisely declines a settlement offer cannot shift its own costs. Defendant contends, however, that the offer remains relevant as a factor for the court to consider in deciding whether shifting of plaintiffs' fees are in order.

Defendant cites *Haworth v. Nevada,* 56 F.3d 1048 (9th Cir.1995), for the proposition that failure to accept a settlement offer larger than the amount of the ultimate recovery is a factor militating against shifting a plaintiff's subsequent fees and expenses. *Haworth* involved an action for overtime wages under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 216(b) (1990). Federal Rule of Civil Procedure 68[7] did not apply directly because of the unique definitions of "reasonable attorney fees" under the FLSA. The court went on, nevertheless, to apply factors relevant under the Rule to deny fees. Defendant points to such factors as the timing and amount of the offer of settlement, the types of services rendered after the offer, and the amount of the ultimate recovery.

■ While we agree with plaintiffs that Fed. Cl. R. 68 does not preclude fee shifting,[8] we agree with defendant that the offer of judgment is a relevant factor to consider. The date of the offer is inevitably a key marker in this case, because defendant has not challenged its liability with respect to fees and expenses incurred prior to that date. More relevant, however, is the fact that, as a group, plaintiffs obtained no positive results by maintaining any disputed position beyond

---

5. The parties do not dispute the applicability of the Act, despite the fact that the case is ultimately being resolved through settlement. *But see Applegate v. United States,* 52 Fed.Cl. 751, 756 (2002) (questioning applicability of the Act when parties did not specify dependence on the URA in calculating reasonable fees.)

6. One claimant was successful only in part.

7. Fed. Cl. R. 68 is identical to its Fed. R. Civ. Pro. analog.

8. It would be impossible to decide, in any given plaintiff's case, whether accepting the offer would have been more advantageous. Although the total amount of recovery may have been less under the settlement, at that point in the litigation when the offer of judgment was made, there were more plaintiffs in the suit, and the lump sum settlement did not specify the amount of individual recovery.

that point. The court's decision on summary judgment was uniformly in favor of defendant's position. Seven claims were dismissed by the court. Thereafter, two other claims were dismissed voluntarily.

The vast majority of attorney hours spent after June 24, 2003, involved one of three matters: the cross-motions for summary judgment, the voluntary dismissal of claims 5 and 14, and the "bridge" issue.[9] Time spent on these matters produced no net benefit to plaintiffs. The court sees no reason to compensate plaintiffs for these hours or related expenses.

We also note that some of plaintiffs' more general arguments in favor of the larger fee and expense amount are not telling. Plaintiffs first note the fact that similar Rails–to–Trails decisions resulted in larger fee awards than compensation awards. The court can shift only those fees and expenses that are actually incurred. The fact that greater fees were incurred in other cases is therefore irrelevant. In any event, the liability phase of this case generated relatively low fees because liability was based, in large part, on the result in the similar case of *Glosemeyer v. United States,* 45 Fed.Cl. 771 (2000).

Plaintiffs' observation that their cooperation in assembling title records facilitated settlement is equally off the mark, insofar as fee-shifting is concerned. While plaintiffs' assistance no doubt expedited final resolution of the settlement, this fact does not permit us to assign fees or expenses where none exist.

Finally, we disagree with plaintiffs' observation that "the government is in essence asking the court to award the government costs [the government] incurred in this litigation." Pl.'s Reply Supp. Appl. Fees & Exp., at 4. Plaintiffs' reasoning fails because it starts with the unfounded presumption that all plaintiffs' costs are automatically shifted to the government. Plaintiffs ignore the court's role in deciding whether plaintiffs' fees and expenses were, within the words of the statute, "reasonable."

9. Plaintiffs ultimately decided not to pursue special compensation with respect to bridges on

What remains after the offer of judgment is time spent on implementing the settlement as to successful plaintiffs in terms of property identification, title issues, and negotiation on quantum. As to those issues only, do we deem it appropriate to shift expenses and fees incurred after the offer of judgment.

Of the fees claimed, $50,119 were incurred after the offer of judgment. As it would be virtually impossible to segregate accurately from this amount time spent on the motion for summary judgment, claims 5 and 14, and the bridge issue, we are willing to estimate based on a reading of the descriptions furnished. In our judgment, only a third of the fees incurred after the offer of judgment should be included in fees reimbursed to plaintiffs. A proportionate amount of expenses are included.

## CONCLUSION

For reasons stated above, the Clerk is directed to enter judgment for plaintiffs in accordance with the terms of the stipulation of July 16, 2004 and order of July 28, 2004, as well as judgment for plaintiffs in the amount of $64,973.92 as fees and expenses to be paid to the firm of Greensfelder, Hemker & Gale, P.C.