Dorothy M. MOORE, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 93–134 L.

United States Court of Federal Claims.

Jan. 31, 2005.

William J. Travis, Greensfelder, Hemker & Gale, P.C., St. Louis, Missouri, for plaintiffs. With him on the briefs was William C. Dunning.

William J. Shapiro, U.S. Department of Justice, General Litigation Section, Environment & Natural Resources Division, for defendant, with whom was Assistant Attorney General Thomas L. Sansonetti.

## OPINION

BRUGGINK, Judge.

This is a class action in which plaintiffs seek compensation for the imposition of an easement for recreational trail use on their land. The parties seek approval of their proposed settlement pursuant to RCFC 23(e). Also pending is class counsel's Motion for Approval of Contingency Fee.

## BACKGROUND

This court previously ruled that the government took an easement for public use without compensation. *Glosemeyer v. United States*, 45 Fed.Cl. 771 (2000) (including the consolidated case *Moore v. United States*, No. 93–134L). Following a valuation trial as to 13 representative parcels, we determined just compensation for those parcels. *Moore v. United States*, 54 Fed.Cl. 747 (2002). We subsequently dismissed seven claims on defendant's motion. *Moore v. United States*, 58 Fed.Cl. 134 (2003). The parties were able to resolve the amount of just compensation as to all but three of the remaining claims. On February 17 and 18, 2004, we held a second trial in St. Louis, Missouri as to the valuation of the final three claims: 6, 69, and 107. That trial resulted in a ruling as to the appropriate compensation for those claims. *See Moore v. United States*, 61 Fed.Cl. 73 (2004).

On September 24, 2004, counsel for the named plaintiffs and for the government filed a joint status report in which they indicated agreement on an amount of compensation and interest with respect to 288 claims (not including 6, 69, and 107). The parties proposed that the government pay $1,655,276.28 in principal and $2,326,531.29 in interest. They also proposed that the government pay a total of $1,000,000 for attorney fees and expenses pursuant to the Uniform Real Property Relocation Act ("URA"), 42 U.S.C. § 4654 (2000), for a total recovery of $5,065,820.62.

By order of November 18, 2004, the court directed the parties to provide notice to class members of the proposed settlement pursuant to RCFC 23(e). In that notice, class members were asked to notify class counsel in writing by December 15, 2004, of any objections to the terms of the settlement.[1] Only one objection was received, from Mr. and Mrs. Robert Wyhs. The Wyhs and other class members were notified of an opportunity to appear in person at a hearing held on December 17, 2004 in St. Louis. Mrs. Wyhs was the only class member who appeared.[2]

On January 3, 2005, class counsel filed a Motion for Approval of Contingency Fee, asking the court to award fees of $1,883,630.12 out of the fund to be paid to the plaintiff class. Defendant has taken no formal position with respect to counsel's request. Oral argument on the motion was held on January 12, 2005.

## DISCUSSION

### A. Proposed Settlement

■ While the law favors settlement, particularly in class actions, the court nevertheless has a crucial role in evaluating the terms of the settlement. *In re General Motors Corp. Pick–Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3rd Cir.1995) ("While parties in a normal suit do not ordinarily require a judge's approval to settle the action, class action parties do.") This is because, under Rule 23(e) "the [trial] court acts as a fiduciary who must serve as a guardian of the rights of absent class members.... The court cannot accept a settlement that the proponents have not shown to be 'fair, reasonable, and adequate.' "[3] *Id.* (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir.1975)). In applying this standard, we find the elements set out in *General*

1. A similar notice had been issued earlier based on a previous attempt at settlement. Because one of the objections caused the parties to question the accuracy of the recovery by that objector, the proposed settlement was withdrawn. Prior to the withdrawal, however, four of the nine objectors to that proposed settlement raised concerns about the amount of attorney fees for class counsel. Counsel had notified the class members (as it also did in the subsequent notice) that the 40% fee from the class recovery to which named plaintiffs had agreed would be taken from principal, interest, and any attorney fees awarded by the court or determined by settlement with the United States. The objections sounded two main themes: (1) a lower percentage contingency fee allegedly had been cited at early meetings with class counsel; and (2) applying the contingency fee percentage against statutory fees would be "double dipping."

2. She was permitted to testify by telephone.

3. RCFC 23(e) states, "A class action shall not be dismissed or compromised without the approval of the court." Unlike Fed.R.Civ.P. 23(e), it does not contain the phrase "fair, reasonable, and adequate" within it. Nevertheless, we find the standard helpful and apply it here.

*Motors* helpful. These include such considerations as: (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in lieu of a judgment by the court; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation. *Id.*

Despite the fact that the proponents of the settlement bear the burden of proving that these factors weigh in favor of approval, *id.* at 785, we note also that "the fact that a proposed settlement has already received preliminary approval [from plaintiffs' counsel] counsels strongly in favor of approving the settlement even over any objections that may be lodged against it." *Nat'l Treasury Employees Union v. United States,* 54 Fed. Cl. 791, 797–98 (2002). Moreover, " '[w]ith such approval a decree is presumptively reasonable. An individual who objects, consequently, has a heavy burden of demonstrating that the decree is unreasonable.' " *Id.* at 798 (quoting *Williams v. Vukovich,* 720 F.2d 909, 921 (6th Cir.1983) (citations omitted)).

■ The settlement in this case comes after substantial court involvement with the merits of plaintiffs' claims. The court has addressed numerous factual and legal questions. The parties also presented evidence of valuation on sixteen parcels. We feel competent, therefore, to evaluate the merits of the settlement in light of such *General Motors* factors as the complexity of the litigation, the risks of establishing liability and damages, the reasonableness of the settlement relative to a possible judgment by the court, and the risks of further litigation.

The court's rulings, moreover, have given counsel ample indication of the court's views. Counsel have carefully determined the amount of acreage affected for each claimant, agreed on the type of property use involved, and then applied the same valuation method for determining just compensation set out in

our prior opinions. *Moore,* 61 Fed.Cl. at 73; *Moore,* 58 Fed.Cl. at 134; *Moore,* 54 Fed.Cl. at 747. In short, we are satisfied that the approach taken by counsel to resolving remaining claims is faithful to the court's prior rulings, fully reflects the likelihood of success as well as the risks of further litigation, and is reasonable in all respects. *See In re General Motors Corp.,* 55 F.3d at 784.

In addition, there was only one substantive objection to the proposed settlement. It concerned the Wyhs property. Mrs. Wyhs, who owns the property with her husband, objected to the valuation of her property on two bases. The first was that the land should have been viewed as commercial property, rather than agricultural land. The second was that the trail frontage agreed upon by the appraisers was inaccurate. She testified that 640 feet of her property underlies the trail, not 548.5 feet, the figure used in the proposed compromise settlement.

We are satisfied that counsel for the parties and their appraisers have appropriately assessed the value of the Wyhs property on the basis that it is agricultural land. We note that the Wyhs' objection is based on the assertion that the presence alone of the former railroad made the property commercial. However, Mrs. Wyhs testified at the fairness hearing that the land is used for recreational purposes.[4] Moreover, when the Wyhs filed their consent to join the suit, they were asked to characterize the use of their property. They indicated that it was "agricultural." Her land has no current commercial use and there was no sidetrack when the railroad easement was in effect. Current zoning is also consistent with the appraisal of the Wyhs property as agricultural.

With respect to the frontage figure, 548.5 feet was a compromise between 640 feet, the figure advanced initially by class counsel, and 462 feet, the figure used by the government's appraiser. The court examined the relevant documents offered by class counsel and the government and heard Mrs. Wyhs's testimony to the effect that the 640 feet figure was given to her by the prior owner. We are satisfied that the Wyhs own no more than 548.5 feet along the trail. It is apparent to

---

**4.** In any event, the valuation as well as the claim

itself of necessity presume no railroad is present.

the court from the evidence relied upon by the Wyhs that the 640 feet number is incorrect. The Wyhs benefited, in short, from the compromise.

In sum, we accept the proposed settlement as to principal and interest as fair. The parties' valuation method for the 288 claims enumerated in the joint partial stipulation was just and in accordance with this court's prior rulings. Only one of the nearly 300 class members submitted an objection to the valuation of their property, which failed to demonstrate that the settlement is unreasonable. The sum of $3,981,807.57 ($1,655,276.28 in principal and $2,326,531.29 in interest) is a reasonable and well-supported figure.[5]

In addition to principal and interest, the parties also settled the amount of fees and expenses due under the URA. *See* 42 U.S.C. § 4654. The parties agreed on the figure of $1,000,000 for both fees and expenses. As this is part of the larger settlement that must be approved, the court must assess the fairness of the statutory fees. *See Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir.2003). Such a settlement is subject to the same scrutiny given the merits award; it must be "fundamentally fair, adequate, and reasonable." *Id.*

■ We first note that the settlement of statutory fees is permissible, even in conjunction with the merits award. *See Evans v. Jeff D.*, 475 U.S. 717, 720, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986); *Staton*, 327 F.3d at 971. To ensure that the statutory attorney fee settlement is fair, the court should compare it to the amount class counsel would have obtained under the statute.[6] *See Staton*, 327 F.3d at 964. If the settlement is distinctly higher than the award class counsel would

have received under the statute, the settlement may be unreasonable. *Id.* ("If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merit provisions.").

■ We need not calculate the URA award with mathematical precision. It is enough that the settlement amount is a reasonable approximation of the amount due under the statute. The lynchpin to calculation of a fee under the URA is the "lodestar" figure. This is derived by multiplying the hours reasonably expended in pursuit of a successful claim by each attorney's reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Wash. Metro. Area Transit Auth. v. United States*, 57 Fed.Cl. 148 (2003); *Applegate v. United States*, 52 Fed.Cl. 751 (2002). In his Motion for Contingency Fee, class counsel claims that he would have been entitled to $850,097.50 in attorneys' fees at historic rates and that he has incurred $356,745.33 in actual expenses.[7] As the settlement is less than the award class counsel claimed under the statute, it is clear that the settlement of the statutory fees did not unduly influence the settlement of the merits. Our observation of counsel's vigorous effort and success in this protracted litigation persuades us that $1,000,000 is not an unreasonable figure for settling the government's obligations under the URA.

Based on the above, the terms of the settlement as a whole are reasonable and well supported. The amount of $5,065,820.62 will be awarded.

## B. Class Counsel's Contingency Fee

■ In addition to approval of the settlement, class counsel asks that the court

---

5. The $3.9 million figure does not include the principal and interest due for claim numbers 6, 69, and 107, $84,013.05.

6. The URA allows for settlement fees and expenses. The Attorney General "shall determine and award or allow to such plaintiff, as a part of such ... settlement, such sum as will in the opinion of ... the Attorney General reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding." 42 U.S.C.

§ 4654(c). In such a case, the Attorney General's opinion is entitled to deference. The court thus does not engage in the same in-depth analysis as it would if it were rendering an award under the statute. We need only determine whether the terms of the settlement are "fair, reasonable, and adequate." *In re General Motors*, 55 F.3d at 785.

7. Counsel also claims that, at present rates, his firm would have been entitled to slightly over $1,040,000 in attorneys' fees.

approve the payment of $1,883,514.10 in attorneys' fees out of the common fund created by the settlement and the prior award. A request for some percentage of the total award is not inappropriate, despite the fact that the parties have settled the matter of statutory fees and that the resulting fee would be higher than that received under the fee-shifting statute. *See Staton,* 327 F.3d at 967 ("[U]nless Congress has forbidden the application of the common fund doctrine in cases in which attorneys could potentially recover fees under the [fee-shifting statute], the courts retain their equitable power to award common fund attorneys' fees."). Thus, class counsel may request an award of fees from the common fund on the equitable notion that lawyers are entitled to reasonable compensation for their professional services from those who accept the fruits of their labors. *See Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980); *Knight v. United States,* 982 F.2d 1573, 1580 (Fed.Cir.1993); *Applegate,* 52 Fed.Cl. at 755.

■ In this case, evaluating the reasonableness of an award for attorneys' fees implicates both how the fund is calculated and what percentage is appropriate to apply. Counsel seeks 40% of approximately $4.7 million, which is characterized as the common fund. Counsel arrived at this figure by subtracting $356,745.33 in expenses from the gross recovery of $5,065,820.62 ($3,981,807 in principal and interest for the settled claims; $84,013.05 in principal and interest for claims 6, 69, and 107; and $1,000,000 in URA fees and expenses). Counsel's request would result in an award of $1,883,630.12 in attorneys' fees, and $356,745.33 in expenses, leaving $2,825,445.17 for the class.[8]

At the fairness hearing, the court expressed its reservations about the method of calculating counsel's contingency fee and invited him to address those concerns.[9] Accordingly, counsel has filed a written defense of his fee calculation. The government nominally takes no position. Nevertheless, in its response, it argues that a 40% contingency fee is unreasonably high.[10]

The Federal Circuit has not articulated a preference for a particular method when calculating an award of attorneys' fees under the common-fund theory. However, an award is typically based on some percentage of the common fund. *See Manual for Complex Litigation (Fourth)* § 14.121, p. 187 n. 483 (2004). In this manner, attorneys' fees are spread among all members of the class in proportion to the benefits obtained, not just among the representative class members who entered into agreements with class counsel. On the other hand, the lodestar approach has also been used in common-fund cases. As explained above, the lodestar calculation begins with multiplying the number of hours reasonably expended by a reasonable hourly rate. *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. The resulting figure may be adjusted up or down depending on several equitable factors. *Id.* at 434 n. 9, 103 S.Ct. 1933; *Applegate,* 52 Fed.Cl. at 762–63. Courts have also used some combination of the lodestar and percentage-of-the-fund methods.

We do not view ourselves as bound by any one methodology. The decision to award attorneys' fees in common-fund cases is committed to the sound discretion of the court, which must consider the individual circumstances of the case. *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 774 (11th Cir.1991). Ultimately controlling is the requirement that the award of attorneys' fees be reasonable. We view each approach merely as tools in this process. For the following reasons, we award class counsel $1.6 million in attorneys' fees.

---

8. $2,825,445.17 is 55.77% of the total judgment.

9. There were no objections to the amount of attorney fees in connection with the December 17 fairness hearing. As indicated above, however, there were four such objections filed with respect to the earlier notice of proposed class settlement. *See supra* note 1. While these objections were not renewed in response to the second proposed settlement, it is fair to assume that class members believed that their prior objections would still be considered.

10. The government inadvertently overstates class counsel's fee request by including expenses in the sum against which the percentage would be applied.

If the court were to use the percentage-of-the-fund approach, it would be guided by the such factors as: (1) the quality of counsel; (2) the complexity and duration of the litigation; (3) the risk of nonrecovery; (4) the fee that likely would have been negotiated between private parties in similar cases; (5) any class members' objections to the settlement terms or fees requested by class counsel; (6) the percentage applied in other class actions; and (7) the size of the award. *Manual for Complex Litigation (Fourth)* § 14.121, p. 192.

In support of his 40% rate, class counsel advances several equitable arguments, notably that the litigation has been complex, that it has been funded by class counsel at his own risk, and that the value of the ultimate fee recovery is diminished by the decade it has taken to bring the case to closure.[11] We agree. Counsel has done an excellent job squiring a case with many procedural complexities. The litigation has gone on for twelve years with counsel investing some 6,000 hours. Moreover, counsel has not received payment for his services during that time and took a risk that he would not recover anything if the case was unsuccessful.

Counsel's main justification for a recovery of approximately $1.9 million is the fee negotiated with the named plaintiffs. They agreed to pay 40% of an amount consisting of the principal recovery (compensation and interest) plus whatever amount was recovered as fees, either through settlement or by court award.[12] Counsel concedes that we are not bound by the fee contract. He argues, however, that his proposed method of calculating fees is presumptively reasonable in light of this agreement, and that it is strong evidence of the legal market in St. Louis, the primary situs for the litigation.

We do not agree that the fee arrangement with named plaintiffs creates a presumption of reasonableness. There were approximately 300 claims in this case. Only a few class members entered into the fee arrangement, and counsel has offered no other evidence to support its claim that 40% is the prevailing rate in St. Louis. By itself, the fee arrangement is insufficient to show that counsel's requested fee is reasonable.

Far more relevant, we believe, is the typical award in common-fund cases. While 40% is within the acceptable range, awards more typically range between 20% to 30% of the total fund, with 50% being the upper limit. *Nat'l Treasury Employees Union,* 54 Fed.Cl. at 807; *Manual for Complex Litigation (Fourth)* § 14.121 n. 488 (2004) (citing several studies); Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 14:6, at 550–51 (4th ed.2002). *See also Swedish Hospital Corp. v. Shalala,* 1 F.3d 1261, 1272 (D.C.Cir. 1993) (awarding a 20% contingency fee). Some circuits have set a benchmark to be used when calculating a percentage. *Staton,* 327 F.3d at 968 (endorsing a 25% benchmark). *See also Florin v. Nationsbank of Ga., N.A.,* 60 F.3d 1245, 1249 (7th Cir.1995) (adopting a benchmark range between 20% and 30%). *But see In re Cendant Corp. Prides Litig.,* 243 F.3d 722, 736–37 (3d Cir. 2001) (rejecting formalistic use of benchmark); *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 52 (2d Cir.2000) ("[M]arket rates, where available, are the ideal proxy for [attorney] compensation."). Our reading of these authorities suggest that one-third is a typical recovery. Applying it here would put the fee well within the acceptable range and would accurately reflect the circumstances of this case. One third of $4,709,075.33, the total award minus counsel's expense request, would be $1,568,122.07.

---

11. Class counsel further claims that the "effective contingency rate" of his request is only 31%. He makes this assertion by first subtracting the pre-distribution expert fees and expenses of approximately $357,000. He then subtracts his proposed fee of approximately $1.9 million. He divides the resulting $2,825,271.10 by the total principal and interest recovery of $4,065,820.62 to come to the conclusion that the class members will recover 69% of the principal and interest in this case. He thus concludes that the class members themselves "would effectively pay only 31% of the class award to counsel." As counsel admits, however, he is seeking 40% of the total award, after expenses are paid from the fund, and that any attorneys' fees will reduce the class members' ultimate recovery accordingly.

12. Plaintiffs who opted into the suit were not given this level of detailed explanation of the contract for fees. *See supra* n. 1.

Such an award would adopt counsel's methodology, in which he proposes to include statutory fees in the sum against which the percentage is applied. We are concerned by this latter feature of the application, however, because it gives counsel a financial stake in the length of the litigation. We are additionally concerned by such a formula when a fee-shifting statute is available because counsel was assured of that minimum amount of recovery by law, assuming any recovery.

In defense of his methodology, counsel has pointed the court to decisions which do include recovered attorneys' fees in the common fund. Most of the cases cited by counsel, however, did not involve fee-shifting statutes, and none involved the URA. While not directly on point, the Ninth Circuit's decision in *Staton* provides the most useful discussion of the rationale for the inclusion of statutory fees. *Staton* involved the proposed settlement of employment discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.*, and 42 U.S.C. § 1981 (2000). The merits of the settlement were conditioned upon judicial approval of agreed-upon attorneys' fees. The parties used a common-fund approach to calculate fees even though they were to be paid directly by defendant, not from an actual common fund. The trial court approved the settlement. On appeal, the court discussed the interaction between the common-fund doctrine and the relevant fee-shifting statutes:

> Application of the common fund doctrine to class action settlements does not compromise the purposes underlying fee-shifting statutes. In settlement negotiations, the defendant's determination of the amount it will pay into a common fund will necessarily be informed by the magnitude of its potential liability for fees under the fee-shifting statute, as those fees will have

to be paid after successful litigation and could be treated at that point as part of a common fund against which the attorneys' fees are measured. Conversely, the prevailing party will expect that part of any aggregate fund will go toward attorneys' fees and so can insist as a condition of settlement that the defendants contribute a higher amount to the settlement than if the defendants were to pay the fees separately under a fee-shifting statute.

*Staton*, 327 F.3d at 968–69. The court ultimately concluded that the parties' use of common-fund principles to justify a higher fee amount than it would have obtained under the fee-shifting statute was improper because the parties were not willing to give the court discretion to determine a reasonable fee. *Id.* at 969–71. In doing so, however, it also stated that, had the parties given the court such discretion, the application of common-fund principles by the court would not conflict with the purposes of the fee-shifting statutes of Title VII. *Id.* at 967–69.

We agree with the court in *Staton* and counsel here that the application of common-fund principles generally does not conflict with the purpose behind fee-shifting statutes. However, unlike other fee-shifting statutes, the URA is uniquely tied to the Fifth Amendment principle of just compensation. It is designed to make plaintiffs whole. *See Rocca v. United States*, 205 Ct.Cl. 275, 282, 500 F.2d 492 (1974); *Florida Rock Indus., Inc. v. United States*, 9 Cl.Ct. 285, 290 (1985). Landowners are entitled under the statute to reimbursement for a reasonable attorney fee on the theory that making the landowner suffer that expense would leave him or her with only partial compensation. *See Florida Rock Indus., Inc.*, 9 Cl.Ct. at 290. Applying the percentage to fees collected under the statute is at odds with that purpose.[13] Similarly, some courts have ruled that expenses

---

13. We recognize that, taken to its literal conclusion, this rationale would limit class counsel to the amount collected as URA fees. This is obviously an unsuitable result. An additional purpose of the URA was to encourage settlement of takings claims by giving plaintiffs the ability to attract counsel. H.R.Rep. No. 91–1656 (1970), *reprinted in* 1970 U.S.C.C.A.N. 5850, 5881. Were we to conclude that counsel could only recover its fee award under the statute, counsel

would have an incentive not to settle. Thus, application of the common fund doctrine in takings cases does not conflict with the URA's purposes. *See Applegate*, 52 Fed.Cl. at 751 (holding on alternative grounds that the URA did not control the method of calculating attorneys' fees in the event of a settlement). We merely observe the obvious—to the extent fees exceed the statutory sum, they impinge on the class recovery.

should be subtracted from the common fund upon which the recovery percentage is applied because doing so increases the incentive to be cautious in incurring expenses and more closely aligns the interests of class members and counsel. *See In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 193 (E.D.Pa. 2000); *Wells v. Dartmouth Bancorp, Inc.*, 813 F.Supp. 126, 129 (D.N.H.1993); *Levit v. Filmways, Inc.*, 620 F.Supp. 421, 426 (D.Del. 1985). We see no principled difference in this respect between fees and expenses. If we applied counsel's 40% figure only to principle and interest, he would receive $1,626,328.25.[14]

Finally, calculation of an attorney fee under the URA would utilize the lodestar method, which in this case would begin with a base request of approximately $850,097.50, at historic rates. Counsel argues that, at current rates, this would amount to more than $1 million. He further points out that, if the court were to apply a multiplier, a lodestar calculation could result in a fee as high as $2 million.[15] While unnecessary and certainly not controlling at this point, however, we note that a URA calculation also would have forced the court to observe that several of counsel's legal arguments were unsuccessful and that much of his trial presentation with respect to valuation was rejected. *See Moore*, 61 Fed.Cl. at 73; *Moore*, 58 Fed.Cl. at 134; *Moore*, 54 Fed.Cl. at 747. *See generally Hubbert v. United States*, 62 Fed.Cl. 73 (2004) (holding that time spent on matters producing no net benefit to plaintiffs are not reimbursable under the URA). In short, it is far from certain that a significant multiplier would have been warranted, or indeed, that

counsel would have been compensated for all of his hours.

In sum, we are confronted with various possible outcomes. A fee under a conservative lodestar approach would likely be in the range of $1 million. On the other hand, even if we were to accept counsel's requested 40% rate, at the higher end of percentage recoveries, we believe it would be unreasonable also to apply it to an amount representing statutory fees. The resulting award would be $1,626,328.25. If we were to include statutory fees, as counsel suggests, one-third of the total recovery after expenses would be $1,568,122.07.

In light of the above, we conclude that a fee award of $1.6 million is a reasonable recovery for class counsel. This is essentially 34% of the total award including statutory fees and is consistent with the standard percentage-of-the-fund approach. While this is slightly above the median percentage in class actions or likely lodestar award in this case, it is well within acceptable ranges and is justified by the relevant *General Motors* factors: counsel was skilled; the litigation was complex and lasted twelve years; the risk of nonrecovery was large as there was no precedent at the time he took the case; it is consistent with percentages awarded in other class actions; and it is reasonable in light of the size of the award.

Class counsel also asks to court to approve the payment of $356,745.33 directly from the common fund for expenses and expert fees. Class counsel's request is granted.

## CONCLUSION

The clerk is directed to enter judgment in the total amount of $5,065,820.62: $84,013.05

---

14. We do not change our view because of the Supreme Court's recent decision in *Commissioner v. Banks*, —— U.S. ——, 125 S.Ct. 826, 160 L.Ed.2d 859 (2005), which held that, as a general rule, when a litigant's recovery constitutes income, it includes the portion of the recovery paid to the attorney as a contingency fee because it is best viewed as an anticipatory assignment of a principal's income to his agent. In this case, the recovery represents compensation for lost property rights, rather than replacement of income. Moreover, we engage in the above analysis merely as one method among several to gauge what is

a reasonable fee in this case. It does not directly determine the ultimate award of fees.

15. Counsel concedes that a multiplier would not be appropriate under the statute in light of *City of Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), which held that risk multipliers are impermissible when calculating the lodestar under a statutory fee-shifting provision. He argues, however, that some courts have found *Dague* inapplicable in common-fund cases. *See, e.g., Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 564–65 (1994). We need not decide that question here.

for claimants Bandy, Kampmann, Meyer; $3,981,807.57 in principal and interest for remaining class members; and $1,000,000 for attorneys' fees, expert fees, and all other litigation expenses. The judgment is to be made payable to class counsel for distribution to the class members according to the terms of this order, the order of October 3, 2003, and the proposed settlement filed September 24, 2004. Counsel is directed to pay $356,745.33 in litigation expenses from the judgment as follows:

    (1) $453.24 for attorneys' fees advanced by David R. Goller;

    (2) $3,743.41 for attorneys' fees advanced by Dorothy M. Moore;

    (3) $39,150.00 for cost of appraisals advanced by various class members;

    (4) $253,377.60 for unpaid appraisal fees and expenses due to Dinan Real Estate Advisors, Inc.;

    (5) $60,021.08 in expenses advanced by Greensfelder, Hemker, & Gale, P.C.

Counsel's January 5, 2005 Motion for Approval of Contingency Fee is granted to the extent set out above. This order resolves all pending motions, including all pending motions or applications for attorney fees. All such motions are denied as moot.