# United States Court of Appeals for the Federal Circuit

---

**HEALTH REPUBLIC INSURANCE COMPANY,**
*Plaintiff-Appellee*

**KAISER FOUNDATION HEALTH PLAN INC., KAISER FOUNDATION HEALTH PLAN OF GEORGIA, KAISER FOUNDATION HEALTH PLAN OF THE MID-ATLANTIC STATES, INC., KAISER FOUNDATION HEALTH PLAN INC. OF COLO., KAISER FOUNDATION HEALTHPLAN OF THE NW, GROUP HEALTH COOPERATIVE, HARKEN HEALTH INSURANCE COMPANY, HEALTH PLAN OF NEVADA, INC., OXFORD HEALTH PLANS (NJ), INC., ROCKY MOUNTAIN HEALTH MAINTENANCE ORGANIZATION, INCORPORATED, UNITEDHEALTHCARE BENEFITS PLAN OF CALIFORNIA, UNITEDHEALTHCARE COMMUNITY PLAN, INC., UNITEDHEALTHCARE INSURANCE COMPANY, UNITEDHEALTHCARE LIFE INSURANCE COMPANY, UNITEDHEALTHCARE OF ALABAMA, INC., UNITEDHEALTHCARE OF COLORADO, INC., UNITEDHEALTHCARE OF FLORIDA, INC., UNITEDHEALTHCARE OF GEORGIA, INC., UNITEDHEALTHCARE OF KENTUCKY, LTD., UNITEDHEALTHCARE OF LOUISIANA, INC., UNITEDHEALTHCARE OF MISSISSIPPI, INC., UNITEDHEALTHCARE OF NEW ENGLAND, INC., UNITEDHEALTHCARE OF NEW YORK, INC., UNITEDHEALTHCARE OF NORTH CAROLINA, INC., UNITEDHEALTHCARE OF OKLAHOMA, INC., UNITEDHEALTHCARE OF PENNSYLVANIA, INC., UNITEDHEALTHCARE OF THE MID-ATLANTIC, INC., UNITEDHEALTHCARE OF THE**

**MIDLANDS, INC., UNITEDHEALTHCARE OF THE MIDWEST, INC., UNITEDHEALTHCARE OF UTAH, INC., UNITEDHEALTHCARE OF WASHINGTON, INC., UNITEDHEALTHCARE OF OHIO, INC., ROCKY MOUNTAIN HEALTHCARE OPTIONS, INC., ALL SAVERS INSURANCE COMPANY, UNITEDHEALTHCARE INSURANCE COMPANY INC.,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant*

————————————

2022-1018

————————————

Appeal from the United States Court of Federal Claims in No. 1:16-cv-00259-KCD, Judge Kathryn C. Davis.

-------------------------------------------------

**COMMON GROUND HEALTHCARE COOPERATIVE, ON BEHALF OF ITSELF AND ALL OTHERS SIMILARLY SITUATED,**
*Plaintiff-Appellee*

**KAISER FOUNDATION HEALTH PLAN INC., KAISER FOUNDATION HEALTH PLAN OF GEORGIA, KAISER FOUNDATION HEALTH PLAN OF THE MID-ATLANTIC STATES, INC., KAISER FOUNDATION HEALTH PLAN INC. OF COLO., KAISER FOUNDATION HEALTHPLAN OF THE NW, GROUP HEALTH COOPERATIVE, HARKEN HEALTH INSURANCE COMPANY, HEALTH PLAN OF NEVADA, INC., OXFORD HEALTH PLANS (NJ), INC., ROCKY MOUNTAIN HEALTH MAINTENANCE**

**ORGANIZATION, INCORPORATED, UNITEDH-EALTHCARE BENEFITS PLAN OF CALIFORNIA, UNITEDHEALTHCARE COMMUNITY PLAN, INC., UNITEDHEALTHCARE INSURANCE COMPANY, UNITEDHEALTHCARE LIFE INSURANCE COM-PANY, UNITEDHEALTHCARE OF ALABAMA, INC., UNITEDHEALTHCARE OF COLORADO, INC., UNITEDHEALTHCARE OF FLORIDA, INC., UNIT-EDHEALTHCARE OF GEORGIA, INC., UNITEDH-EALTHCARE OF KENTUCKY, LTD., UNITEDHEALTHCARE OF LOUISIANA, INC., UNITEDHEALTHCARE OF MISSISSIPPI, INC., UNITEDHEALTHCARE OF NEW ENGLAND, INC., UNITEDHEALTHCARE OF NEW YORK, INC., UNITEDHEALTHCARE OF NORTH CAROLINA, INC., UNITEDHEALTHCARE OF OKLAHOMA, INC., UNITEDHEALTHCARE OF PENNSYLVANIA, INC., UNITEDHEALTHCARE OF THE MID-ATLAN-TIC, INC., UNITEDHEALTHCARE OF THE MID-LANDS, INC., UNITEDHEALTHCARE OF THE MIDWEST, INC., UNITEDHEALTHCARE OF UTAH, INC., UNITEDHEALTHCARE OF WASHINGTON, INC., UNITEDHEALTHCARE OF OHIO, INC., ROCKY MOUNTAIN HEALTHCARE OPTIONS, INC., ALL SAVERS INSURANCE COMPANY, UNIT-EDHEALTHCARE INSURANCE COMPANY INC.,**
*Plaintiffs-Appellants*

v.

**UNITED STATES,**
*Defendant*

————————————

2022-1019

————————————

Appeal from the United States Court of Federal Claims in No. 1:17-cv-00877-KCD, Judge Kathryn C. Davis.

————————————

Decided:  January 31, 2023

————————————

DEREK L. SHAFFER, Quinn Emanuel Urquhart & Sullivan, LLP, Washington, DC, argued for plaintiffs-appellees. Also represented by DAVID COOPER, New York, NY; J. D. HORTON, ADAM WOLFSON, Los Angeles, CA; STEPHEN A. SWEDLOW, Chicago, IL.

MOHAMMAD KESHAVARZI, Sheppard Mullin Richter & Hampton LLP, Los Angeles, CA, argued for plaintiffs-appellants.  Also represented by JOHN BURNS, MATTHEW G. HALGREN, San Diego, CA.

————————————

Before MOORE, *Chief Judge*, TARANTO and CHEN, *Circuit Judges*.

TARANTO, *Circuit Judge*.

These appeals present a challenge to awards of attorney's fees to class counsel taken out of the classes' recoveries in successful class actions against the United States based on the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010), and the Health Care and Education Reconciliation Act, Pub. L. No. 111-152, 124 Stat. 1029 (2010) (collectively, the ACA).  We vacate and remand for reconsideration of the fee awards.

In the ACA, Congress created a three-year Risk Corridors program to accompany the creation of new health-insurance marketplaces, which presented uncertain risks for participating health-insurance companies.  To encourage participation, Congress provided, among other things, that qualified health-plan issuers (QHP issuers) that offered

their products in the new marketplaces would be entitled to payments from the Secretary of the Department of Health and Human Services (HHS) if they suffered sufficient losses.  42 U.S.C. § 18062(b).  When the government failed to make the payments required by the statute, many QHP issuers sued the United States in the Court of Federal Claims (Claims Court) seeking damages under the Tucker Act, 28 U.S.C. § 1491(a)(1).

Among the suits were two class actions now before us, *Health Republic Insurance Co. v. United States* and *Common Ground Healthcare Cooperative v. United States*, in which the law firm of Quinn Emanuel Urquhart & Sullivan, LLP (Quinn Emanuel) was appointed lead counsel for classes of QHP issuers seeking payment of the past-due amounts.  Class Certification Order, *Health Republic*, No. 16-cv-00259 (Fed. Cl. Jan. 3, 2017); Class Certification Order, *Common Ground*, No. 17-cv-00877 (Fed. Cl. Jan. 8, 2018).  In the opt-in notices sent to potential class members with court approval, Quinn Emanuel represented that it would seek attorney's fees to come out of any recovery, that it would seek no more than 5% of any judgment or settlement obtained, and that the Claims Court would determine the exact amount based on, among other things, how many issuers participated, the amount at issue in the case, and a so-called "lodestar cross-check" (based on the hours actually worked).  The *Health Republic* and *Common Ground* cases were stayed on the merits pending the resolution of appeals in other cases involving materially identical claims.  During the stay, the Supreme Court, in other cases, ruled against the government on the central issue in the various cases, holding that QHP issuers were entitled to collect ACA-promised Risk Corridors payments through Tucker Act actions.  *Maine Community Health Options v. United States*, 140 S. Ct. 1308, 1331 (2020).

In light of *Maine Community*, the Claims Court entered money judgments in favor of the *Health Republic* and *Common Ground* classes, in amounts adding to about $3.7

billion. *See Health Republic Insurance Co. v. United States*, 156 Fed. Cl. 67, 71 (2021). The Claims Court then awarded Quinn Emanuel 5% of each of the common funds recovered in *Health Republic* and *Common Ground*, rejecting various objections of thirty-four class members (Objectors), the total fee amounting to about $185 million, to be taken out of the class members' recovery. *Id.* at 84. The Objectors now appeal, contending that the attorney's fee award (the two awards considered as one) was unreasonable. Because the Claims Court's analysis was inconsistent with the terms of the class opt-in notices and did not adequately justify the extraordinarily high award, we vacate the award and remand for a redetermination of what fees should be awarded.

I

A

In the ACA, Congress provided for the creation of online marketplaces through which issuers of health-benefits plans could sell their plans. 42 U.S.C. § 18031(b)(1). As an incentive for issuers to participate in the marketplaces, whose novelty came with substantial uncertainty, the ACA established the Risk Corridors program, among other risk-mitigation measures, to "defray the carriers' costs and cabin their risks" during the first three years of operation of the marketplaces (2014, 2015, and 2016). *Maine Community*, 140 S. Ct. at 1315–16. Under the Risk Corridors program, QHP issuers participating in the online marketplaces "with profits above a certain threshold would pay" amounts to the HHS Secretary, while QHP issuers participating in the online marketplaces "with losses below that threshold would receive payments from" the Secretary. *Id.* at 1316; *see* 42 U.S.C. § 18062(b).

During the Risk Corridors program's three-year existence, Congress passed appropriations bills that included riders barring use of the appropriated funds to make the Risk Corridors payments to the unprofitable QHP issuers.

*See Maine Community*, 140 S. Ct. at 1317. Each year, moreover, the money collected from the profitable QHP issuers was insufficient to cover the ACA-required payments to the loss-incurring QHP issuers. *Id.* Because of the appropriations riders, the government did not pay what the ACA required. *Id.*

QHP issuers that were owed government payments filed several similar actions against the United States under the Tucker Act, 28 U.S.C. § 1491(a), seeking an award of the overdue amounts. The first of the actions was filed by Quinn Emanuel on February 24, 2016, on behalf of Health Republic Insurance Company (Health Republic) and a putative class of issuers. *Health Republic*, 156 Fed. Cl. at 71. The government moved to dismiss the *Health Republic* complaint on June 24, 2016, asserting lack of subject-matter jurisdiction, but the Claims Court denied the motion on January 10, 2017. *Id.* at 72.

One week earlier, on January 3, 2017, the Claims Court had certified the proposed opt-in class in *Health Republic* and appointed Quinn Emanuel as lead class counsel and Health Republic as class representative, and on February 24, 2017, the Claims Court approved Quinn Emanuel's proposal for notice to the potential class members. *Id.* On March 15, 2017, Quinn Emanuel sent a notice stating that, if a recovery resulted, it would seek an attorney's fee award that would be deducted from any recovery by the class, but it did not identify how much it would seek, whether by indicating a percentage of recovery or otherwise. *Id.*; J.A. 696; *see* J.A. 1389 (stating date of that notice). The opt-in deadline was May 12, 2017. J.A. 696. Almost immediately after the notice was sent, Quinn Emanuel, based on concerns that some potential class members misunderstood the possible amount of requested fees, sought and obtained the Claims Court's permission to distribute, and it did distribute, a supplemental class notice, *Health Republic*, 156 Fed. Cl. at 72, which added the following:

> Class Counsel [Quinn Emanuel] represents that it will request no more than **5%** of any judgment or settlement obtained for the QHP Issuer Class. The fee may be substantially less than 5% depending upon the level of class participation represented by the final membership of the QHP Issuer Class. In any event, the exact percentage of Class Counsel's fees will be determined by the Court subject to, among other things, the amount at issue in the case and what is called a "lodestar cross-check" (*i.e.*, a limitation on class counsel fees based on the number of hours actually worked on the case). *See, e.g., Geneva Rock Products, Inc. v. United States*, 119 Fed. Cl. 581, 595–96 (2015); *Loving v. Sec'y of Health and Human Servs.*, 2016 WL 4098722, at \*4 (Fed. Cl. Spec. Mstr. July 7, 2016).

Unopposed Motion to Supplement the Class Notice, *Health Republic*, No. 16-cv-00259 (Mar. 24, 2017) (emphasis in original), as modified by Order Approving the Unopposed Motion to Supplement the Class Notice, *Health Republic*, No. 16-cv-00259 (Mar. 27, 2017). Overall, 153 QHP issuers opted into the *Health Republic* class. *Health Republic*, 156 Fed. Cl. at 72.

On March 3, 2017, Health Republic had moved for summary judgment, and the government cross-moved for summary judgment on April 12, 2017. *Id.* On July 11, 2017, the Claims Court stayed proceedings pending the resolution of already-pending appeals in other Risk Corridors cases, in which Quinn Emanuel was not counsel, that raised identical legal issues.

B

Quinn Emanuel filed a separate class action on behalf of Common Ground Healthcare Cooperative (Common Ground) and a putative class, raising the same claims, and that case proceeded on materially the same course as did the *Health Republic* case, with Quinn Emanuel as class

counsel for a certified opt-in class. *See id.* at 72–73. The notice sent to potential members in the *Common Ground* class was identical in relevant part to the supplemental notice sent in *Health Republic*. *Id.* at 73. Overall, 130 QHP issuers opted into the *Common Ground* class. *Id.* at 73.

C

Both the *Health Republic* and *Common Ground* actions remained stayed until the Supreme Court decided the consolidated set of cases covered by the *Maine Community* opinion. In one of those cases, the Claims Court had ruled for the QHP issuer, but on appeal our court ruled for the government in all the cases, on a single ground: While agreeing that the ACA, considered on its own, created an obligation for which the Tucker Act remedy was available, we held that the appropriations riders overrode that remedy. *See Maine Community*, 140 S. Ct. at 1318. The Supreme Court disagreed with us about the effect of the riders, *id.* at 1323–27, and held that the Tucker Act was available for the loss-incurring QHP issuers to obtain damages reflecting the overdue ACA-required payments, *id.* at 1319–23, 1327–31. The Court concluded that "the temporary Risk Corridors program . . . created a rare money-mandating obligation" and that the qualifying unprofitable QHP issuers were entitled "to collect payment" of all required but unpaid Risk Corridors amounts through damages actions in the Claims Court. *Id.* at 1331.

In light of *Maine Community*, the Claims Court entered Rule 54(b) judgments in favor of the *Health Republic* and *Common Ground* classes, awarding both classes the totality of their unpaid Risk Corridors payments. *See Health Republic*, 156 Fed. Cl. at 73–74. The *Health Republic* class recovered approximately $1.9 billion, and the *Common Ground* class recovered approximately $1.8 billion. *Id.* at 74.

D

After the Claims Court entered judgments in favor of the *Health Republic* and *Common Ground* classes, Quinn Emanuel moved for attorney's fees in both cases, requesting 5%–that is, about $185 million—of the $3.7 billion common-fund recovery. *Health Republic*, 156 Fed. Cl. at 74. Quinn Emanuel stated in a declaration that its attorneys worked "almost 10,000 hours" on the two cases, "at a blended hourly rate of approximately $1033 across partners and associates," with support staff adding more than 400 hours "at an average rate of approximately $325 per hour." J.A. 1792. The Objectors opposed the request for the $185 million award, arguing that the attorney's fee award should be $8.828 million (0.22%) and certainly no more than $20 million (0.54%). The Objectors also contended that the number of hours Quinn Emanuel claimed to have worked on the case should be reduced, noting the stay of the litigation for years and asserting the insufficiency of Quinn Emanuel's supporting declaration. *Health Republic*, 156 Fed. Cl. at 74.

Rule 23 of the Rules of the Court of Federal Claims (like Federal Rule of Civil Procedure 23) authorizes the court to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement" in a certified class action. RCFC 23(h); *see* Fed. R. Civ. P. 23(h) (identical). Appropriately borrowing from case law under Fed. R. Civ. P. 23, *see Progressive Industries, Inc. v. United States*, 888 F.3d 1248, 1253 n.4 (Fed. Cir. 2018) ("[T]he precedent interpreting the Federal Rules of Civil Procedure applies with equal force to the comparable Rules of the Court of Federal Claims."), the parties before us recognize the existence of two common methods for determining what fee to award, under the reasonableness standard, in a case like this, in which a common fund is recovered. One is a percentage-of-the-fund method, through which "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465

U.S. 886, 900 n.16 (1984).  The second is the lodestar method (used generally outside the common-fund context), through which "the court calculates . . . the product of reasonable hours times a reasonable rate," *Haggart v. Woodley*, 809 F.3d 1336, 1355 (Fed. Cir. 2016) (internal quotations omitted) (quoting *City of Burlington v. Dague*, 505 U.S. 557, 559–60 (1992)), and then adjusts that "lodestar" result, if warranted, "on the basis of such factors as the risk involved and the length of the proceedings," *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003).  We have recognized that the Claims Court has discretion to decide what method to use.  *Haggart*, 809 F.3d at 1355.

To determine the attorney's fee to award in the *Health Republic* and *Common Ground* actions, the Claims Court elected to use the percentage-of-the-fund method.  *Health Republic*, 156 Fed. Cl. at 75.  We have not enumerated what facts must be considered when this method is used, but several Claims Court decisions have used a multi-factor test approach, under which the court considers

> (1) the quality of counsel; (2) the complexity and duration of the litigation; (3) the risk of nonrecovery; (4) the fee that likely would have been negotiated between private parties in similar cases; (5) any class members' objections to the settlement terms or fees requested by class counsel; (6) the percentage applied in other class actions; and (7) the size of the award.

*Moore v. United States*, 63 Fed. Cl. 781, 787 (2005) (citing *Manual for Complex Litigation* § 14.121 (4th ed. 2004)); *see also Kane County v. United States*, 145 Fed. Cl. 15, 18 (2019); *Mercier v. United States*, 156 Fed. Cl. 580, 591 (2021); *Health Republic*, 156 Fed. Cl. at 74.  Guided by the seven *Moore* factors, the Claims Court in the present cases rejected the Objectors' challenges and approved the 5% award requested by Quinn Emanuel.  *Health Republic*, 156 Fed. Cl. at 77–83.

The Objectors had argued for use of a "lodestar cross-check" as part of the percentage-of-the-fund approach, which, they urged, would show that a $185 million (5%) fee would be much too large.  The name reflects an approach taken in many judicial decisions, under which the reasonableness of a potential percentage-of-the-fund fee is checked by "dividing the proposed fee award by the lodestar calculation, resulting in a lodestar multiplier," *In re AT & T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006), and when this implicit multiplier "is too great, the court should reconsider its calculation under the percentage-of-recovery method, with an eye toward reducing the award," *In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294, 306 (3d Cir. 2005).  In this case, the $185 million fee would be 18 to 19 times the product of Quinn Emanuel's asserted hours and asserted rates.  *Health Republic*, 156 Fed. Cl. at 82.  Despite that very high implicit multiplier, the Claims Court stated that it need not perform a lodestar cross-check, then added: "[E]ven if the Court applied the lodestar cross-check, a multiplier of 18–19 would, at least, not be outside the realm of reasonableness."  *Id.*

The Claims Court entered final judgment in both the *Health Republic* and *Common Ground* actions on September 17, 2021, awarding 5% of the respective common funds as attorney's fees.  The Objectors timely appealed on October 1, 2021.   We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

We review an award of attorney's fees for an abuse of discretion.  *Hall v. Secretary of Health & Human Services*, 640 F.3d 1351, 1356 (Fed. Cir. 2011).  A court abuses its discretion when it makes "a clear error of judgment in weighing relevant factors or in basing its decision on an error of law or on clearly erroneous factual findings." *Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1306 (Fed. Cir. 2017) (quoting *Mentor Graphics Corp. v.*

*Quickturn Design Systems, Inc.*, 150 F.3d 1374, 1377 (Fed. Cir. 1998)).  We conclude that the Claims Court abused its discretion in its fee award for several reasons, mostly but not exclusively limited to the court's discussion of a lodestar crosscheck.

A

The Claims Court concluded that it was not necessary to perform a lodestar cross-check in this case.  That conclusion, we hold, was legal error.

It is a sufficient reason for us to so hold that in this case the court-approved notices sent to potential class members, for use by potential members in deciding to whether to opt into the classes, expressly guaranteed use of a lodestar cross-check by the Claims Court in determining an attorney's fee award.  *See supra* p. 8.  Quinn Emanuel cites judicial decisions from other circuits reciting that a trial court need not always subject a potential percentage-of-the-fund fee award to a lodestar cross-check.  *See, e.g.*, *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017) ("Although not required to do so, the court verified the reasonableness of its award by cross-checking it against the lodestar method."); Appellees' Br. at 36 n.6.  But none of the cited decisions recite the existence of a class notice like the ones distributed here and nevertheless approve dispensing with a lodestar cross-check, much less when, as in this case, no change of circumstances or other basis has been advanced for disregarding the guarantee.  We conclude that it is an abuse of discretion to dispense with a lodestar cross-check in these circumstances.

As the Claims Court recognized, the court-approved guarantee of a judicial lodestar cross-check was part of the "deal" offered to potential class members and accepted by what we may assume to be all issuers that chose to join the classes.  *Health Republic*, 156 Fed. Cl. at 79; *id.* (endorsing characterization, in another case, that the act of "opting into the class . . . effectively accepted the offer of

representation" by the named plaintiffs and class counsel).[1]  That characterization properly reflects a well-recognized legal constraint applicable in a class action: Assurances about the future course of the litigation, when stated in a court-approved class notice like the ones here, must generally be respected.  *See In re Diet Drugs*, 369 F.3d 293, 298 (3d Cir. 2004) (concluding that the trial court must manage the actions of class members in a manner "consistent with fair class notice" by abiding by "the terms of the . . . class notice"); *id.* at 318 ("But the Court's power has to be exercised consistent with the terms of the notice . . . on which potential class members relied at the outset of the process."); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 472–74 (2d Cir. 1974) (concluding that the district court abused its discretion by acting "[c]ontrary to the terms" of the class notice's assurances regarding the administration of a class action), *abrogated in part on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000); *cf. In re Chicken Antitrust Litigation*, 810 F.2d 1017, 1019–20 (11th Cir. 1987) (recognizing principle but finding no violation of the notice).

We see no basis for a departure from that principle here.  The class notice in each case before us unequivocally

---

[1] All issuers that opted into the *Common Ground* class did so after the sole notice in that case.  In the *Health Republic* class, an initial notice was superseded, within ten days, by the notice quoted above (identical to the *Common Ground* notice), and the deadline for opting into the class was still at least six weeks away.  No argument has been made to us to give distinctive treatment to class members that opted in between the two notices in *Health Republic* (as such members seemingly could have rescinded initial opt-ins, before the deadline, had there been no modification).  We therefore treat the deal as applying to all persons that joined the class.

stated that a lodestar cross-check would be conducted by the Claims Court in its determination of a reasonable attorney's fee. In each case, developments in the litigation subsequent to the notice and the choices to join the class did not make the process of a cross-check no longer material to a proper adjudication of how much money would be subtracted from the class recovery to pay counsel. In these circumstances, the law required a lodestar cross-check, contrary to the Claims Court's conclusion. And because each class-action notice referred simply to a "lodestar cross-check," what was promised and therefore required was application of the scrutiny and accompanying standards generally bearing that name in attorney's-fee case law.[2]

---

[2] Because of what the class notices promised, we need not decide whether a lodestar cross-check would be required here had there been no class notices requiring it. It is evident, however, that the policies that govern a court's determination of a "reasonable" percentage-of-the-fund attorney's fee under Rule 23(h), noted *infra*, might well call for a lodestar cross-check as part of the inquiry at least as a general matter. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award. Where such investment is minimal, as in the case of an early [resolution], the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted. Thus, while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award."); *Goldberger*, 209 F.3d at 50 ("[T]he lodestar remains useful as a baseline even if the percentage method is eventually chosen. Indeed, we encourage the

B

The Claims Court in this case did not perform the required lodestar cross-check. The court did note what the implicit multiplier would be for the $185 million award if the hours and rates asserted by Quinn Emanuel were accepted, and it stated, citing three judicial decisions in support, that "even if the Court applied the lodestar cross-check, a multiplier of 18–19 would, at least, not be outside the realm of reasonableness." *Health Republic*, 156 Fed. Cl. at 82. That analysis does not suffice even apart from the lack of scrutiny of the lodestar figure itself.

1

The Claims Court did not give required consideration or weight to pertinent principles and to consensus norms based on those principles. Two principles of central importance here were articulated and implicitly endorsed by the Supreme Court in a non-class-action case discussing fees to be paid from a recovery even when agreements between counsel and plaintiffs set a presumptive fixed percentage: "If the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is . . . in order"; and "[a] court should disallow windfalls for lawyers." *Gisbrecht v. Barnhart*, 535 U.S. 789, 808 (2002) (internal quotation marks and citation omitted). Those principles are reflected in various circuit-court decisions in the class-action setting. *See, e.g., In re Bluetooth Headset Products Liability Litigation*, 654 F.3d

---

practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 820 (3d Cir. 1995))). No concrete, persuasive arguments to the contrary have been presented to us. But we need not and do not decide the question.

935, 942 (9th Cir. 2011) ("Thus, for example, where awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage . . . ."); *Walmart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) ("Recognizing that economies of scale could cause windfalls in common fund cases, courts have traditionally awarded fees for common fund cases in the lower range of what is reasonable."); *In re Cendant Corp. PRIDES Litigation,* 243 F.3d 722, 736 (3d Cir. 2001) ("[A]bsent unusual circumstances, the percentage will decrease as the size of the fund increases."); *In re Prudential Insurance Co. America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 339 (3d Cir. 1998)) ("[I]n many instances the increase in recovery is merely a factor of the size of the class and has no direct relationship to the efforts of counsel." (cleaned up) (quoting *In re First Fidelity Bancorporation Securities Litigation*, 750 F. Supp. 160, 164 n.1 (D.N.J. 1990))); *Goldberger*, 109 F.3d at 49 (noting that courts should "prevent unwarranted windfalls for attorneys").

Here, the Claims Court did not apply those principles. Indeed, it indicated a contrary view. The Claims Court noted that "[w]here a successful lawsuit results in a multi-billion-dollar award, even a minute fee percentage can result in a sizeable award to counsel, the case at hand being such an example." *Health Republic*, 156 Fed. Cl. at 81. But it used that fact as a reason to approve, not reduce, Quinn Emanuel's request. *Id.* at 79 (small percentage of recovery "weigh[ed] heavily" in favoring approval of requested fee).

Those principles are reflected in judicial decisions that establish a relevant norm far below an implicit multiplier of 18 to 19. For a lodestar cross-check, "the resulting multiplier need not fall within any pre-defined range," *In re Rite Aid*, 396 F.3d at 307 & n.17, but "[e]ven when the lodestar method is used only as a cross-check, 'courts must take care to explain how the application of a multiplier is justified by the facts of a particular case,'" *In re Cendant,* 243

F.3d at 742 (footnote omitted) (quoting *In re Prudential*, 148 F.3d at 340–41). In particular, a court must provide sufficient analysis and "[c]onsideration of multipliers used in comparable cases" to justify the award made. *In re Rite Aid*, 396 F.3d at 307 & n.17. More particularly still, a court should "examine[] the reasoning behind . . . awards in cases of similar size." *In re Cendant*, 243 F.3d at 737. "[C]ourts setting attorneys' fees in cases involving large settlements must avoid basing their awards on percentages derived from cases where the settlement amounts were much smaller." *Id.* at 736.

That approach is consistent with the principles endorsed by the Supreme Court. And it does not exclude taking full account of the relevant attorney-fees considerations as they apply to a particular case. For example, the parties before us do not dispute that such considerations may include the risk of nonpayment in a contingency-fee common-fund arrangement, *see, e.g.*, *In re Synthroid Marketing Litigation,* 325 F.3d 974, 978 (3d Cir. 2003), and the interest in "sustain[ing] the incentive for attorneys to continue to represent such clients," *Florin v. Nationsbank of Georgia, N.A.*, 60 F.3d 1245, 1247 (7th Cir. 1995). *See also* Fed. R. Civ. P. 23, 2003 Advisory Committee Note ("In determining a fee for class counsel, the court's objective is to ensure an overall fee that is fair for counsel and equitable within the class.").

A number of courts have surveyed relevant fee awards and noted a norm of implicit multipliers in the range of 1 to 4. *See Vizcaino*, 290 F.3d at 1051 n.6 (surveying percentage-based attorney's fee awards in common fund cases of $50–200 million from 1996 through 2001, "with most . . . from 1.0–4.0 and a bare majority . . . in the 1.5–3.0 range"); *In re Cendant,* 243 F.3d at 737–38, 742 (completing a similar survey and reaching a similar conclusion); *In re Prudential,* 148 F.3d at 341 ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." (quoting 3 *Newberg on*

*Class Actions* § 14.03 at 14–15)). Quinn Emanuel recognized the same at oral argument before us. Oral Arg. at 30:43–31:12 (Q: "Do you agree that as a general matter the lodestar multiplier tends to be between the range of 1 and 4?" A: "I think that is true in terms of the reported decisions . . . ."). A multiplier of 18 or 19 is far outside the evident relevant norm and so would require exceptional justification.

The Claims Court cited three decisions as approving implicit multipliers of an order of magnitude akin to the 18-to-19 implicit multiplier based on Quinn Emanuel's figures here. *Health Republic*, 156 Fed. Cl. at 82 (citing *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, 2005 WL 1213926 (E.D. Pa. May 19, 2005); *In re Merry-Go-Round Enterprises, Inc.*, 244 B.R. 327 (Bankr. D. Md. 2000); and *Americas Mining Corp. v. Theriault*, 51 A.3d 1213 (Del. 2012)). But the existence of outliers does not negate the existence of a norm. The Claims Court did not discuss the three decisions, aside from noting the multipliers in each case. And the cited decisions offer particularly weak support for the implicit multiplier here.

The court that decided *Americas Mining* was not a federal court, was not applying federal-law standards, and did not actually conduct a lodestar cross-check. 51 A.3d at 1253–58. In *Stop & Shop*, the district court's award corresponded to a 15.6 multiplier, but none of the class members objected to the award—rather, plaintiffs offered "extraordinary support . . . for counsel's request for fees." 2005 WL 1213926 at *18. And *Merry-Go-Round* was a bankruptcy proceeding in which the bankruptcy court concluded that a court-approved fixed-percentage contingency agreement between counsel and the bankruptcy trustee was reasonable under 11 U.S.C. § 328(a), that enforcement of the agreement was not "unethical" under the rules of professional conduct despite a lodestar multiplier of 19.6, and that the matter was not subject to the standards for assessing fees in common-fund class actions. 244 B.R. at 337–38, 343–44.

The three decisions cited by the Claims Court do not justify a conclusion that the award here is consistent with "responsible discretionary parameters." *In re Cendant,* 243 F.3d at 742.

2

The Claims Court erred in another way as well. In stating simply that an implicit multiplier of 18 to 19 was not outside "the realm of reasonableness," *Health Republic*, 156 Fed. Cl. at 82, the Claims Court misconceived its task as one in which the request for fees was presumptively to be granted, subject only to challengers' demonstration that the request is outside the range of reasonableness and must be reduced. In fact, the Claims Court pervasively framed its inquiry that way once it decided to apply the percentage-of-the-fund method. *See, e.g., id.* at 77 (proceeding "to evaluate the reasonableness of *Class Counsel's requested fee*" (emphasis added)); *id.* (finding "nothing in this category [quality of counsel] that *justifies a reduction in the requested fee*" (emphasis added)); *id.* at 79 (applying risk factor to "support[] [counsel's] fee request"); *id.* at 81 (stating that task is "to evaluate the reasonableness of *Class Counsel's fee request*," and addressing "why a *reduction of fees is not justified*" (emphases added)).

That approach was improper. This is not a case in which a class notice stated that a fixed percentage of recovery would be awarded unless the court determines it to be unreasonable. *Cf. Gisbrecht*, 535 U.S. at 808 (discussing a contingency-fee agreement reviewed only for reasonableness by a court). The class notice in each case before us stated a maximum possible request and that the court itself would determine the proper fee. *See supra* p. 8. At least in such a case, although a range of reasonableness undisputedly exists, *see Health Republic*, 156 Fed. Cl. at 82; *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 340 (1st Cir. 2008), the court's task is to make its own determination of what fee to award, within the range of reasonable

possibilities, considering the relevant principles and precedents addressing comparable facts.

The Claims Court did not identify, and Quinn Emanuel has not cited, any authority that defines the adjudicator's task, in these circumstances, as determining the range of reasonableness and awarding the top end or whatever class counsel requests below that top end. And where there is no agreement by the class to a specified percentage subject only to an unreasonableness check, such an approach would be contrary to the widespread recognition that the trial court has a "fiduciary duty" to protect the interests of the class, given the general non-alignment of the interests of class counsel and the class when a common-fund fee is proposed. *See In re Optical Disk Drive Products Antitrust Litigation*, 959 F.3d 922, 930, 934–35 (9th Cir. 2020); *In re Washington Public Power Supply Systems Securities Litigation*, 19 F.3d 1291, 1302 (9th Cir. 1994) ("Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the [arbiter] must assume the role of fiduciary for the class plaintiffs."); *id.* ("[A]t the fee-setting stage, plaintiffs' counsel, otherwise a fiduciary for the class, has become a claimant against the fund created for the benefit of the class. It is obligatory, therefore, for the trial court judge to act with a jealous regard to the rights of those who are interested in the fund in determining what a proper fee award is." (cleaned up)); *Skelton v. General Motors Corp.*, 860 F.2d 250, 253 (7th Cir. 1988) ("The court becomes the fiduciary for the fund's beneficiaries and must carefully monitor disbursement to the attorneys by scrutinizing the fee applications."); *In re Fine Paper Antitrust Litigation*, 751 F.2d 562, 583 (3d Cir. 1984) ("[F]ee requests from the resulting equitable fund in court must be subjected to heightened judicial scrutiny."); *Goldberger*, 209 F.3d at 52 (reaffirming the standard of fiduciary duty); *Geneva Rock Products, Inc. v. United States*, 119 Fed. Cl. 581,

593 (2015) ("Under RCFC 23(h), the court has a fiduciary duty to independently review the reasonableness of class counsel's proposed fee."), *rev'd in part on other grounds by Longnecker Property v. United States*, 2016 WL 9445914 (Fed. Cir. Nov. 14, 2016); *see also In re Continental Illinois Securities Litigation*, 962 F.2d 566, 568 (7th Cir. 1992) (reviewing and reversing a district court's fee award on behalf of the class though no class member objected).

The Claims Court stated that the "Objectors are seeking to pay an infinitesimal portion of their recovery to [Quinn Emanuel] in attorney's fees." *Health Republic*, 156 Fed Cl. at 81.  But the "portion" of the recovery is not all that matters: Quinn Emanuel, with court approval, expressly promised a lodestar cross-check, whose focus is the actual dollar amount based on hours worked and hourly rates.  Quinn Emanuel's numbers for hours and rates, even if accepted, would produce a lodestar of approximately $10 million, and Quinn Emanuel's $185 million proposal is huge compared to that figure, whereas the Objectors' dollar proposal of $8.828 million is pretty close to it.  And to the extent that the Claims Court was suggesting that it could default to adopting the requester's proposal just because it deemed the Objectors' proposal too low, we see no basis for such a suggestion.  One proposal may be too high and the other too low, with a third figure (proposed by no one) being best supported by the evidence.  The Claims Court did not identify, and Quinn Emanuel has not cited, authority that requires or supports adoption of the position of the *requester* in that circumstance.  Indeed, such an approach would run counter to a federal trial court's responsibility to "ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid[, e]ven in the absence of objections," Fed. R. Civ. P. 23(h), 2003 Advisory Committee Note, and to the placement of the burden regarding fees on the fees claimant in other contexts where there is no advance client agreement to a fixed amount, *see Blum*, 465

U.S. at 895–96 n.11 (stating, in case involving lodestar method, that burden is on fee claimant to support a fee award); *Hensley v. Eckerhart*, 461 U.S. 424, 433, 437 (1983) (same regarding lodestar components); *Rumsey v. Department of Justice*, 866 F.3d 1375, 1379 (Fed. Cir. 2017) (same).

C

For the reasons discussed, we must vacate the award of fees and remand for reconsideration. That reconsideration must include a lodestar cross-check in accordance with this opinion, including an assessment of whether there is sufficient justification for an award with an implicit multiplier outside the mainstream of relevant multipliers. We do not see such justification in what Quinn Emanuel has presented to us.

As part of the lodestar cross-check on remand, the Claims Court should also readdress the Objectors' contentions that Quinn Emanuel has not done enough to justify the lodestar itself—the approximate number of hours and blended rates used to produce the 18-to-19 implicit multiplier. More relaxed specificity and documentation standards apply to examination of the lodestar in a percentage-of-the-fund case compared to the standards applied when the lodestar method is directly used to set the fee (especially where paid by the adverse party). *See In re Rite Aid*, 396 F.3d at 306 ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting." (footnote omitted)). But the Claims Court should provide more explanation than so far presented concerning the adequacy of Quinn Emanuel's hours and rates in light of the Objectors' criticisms. *See Health Republic*, 156 Fed. Cl. at 81–82.

One final point. We have concluded that the court must honor the class-notice commitments if, as here, they remain material to the court's task and that the court in this case may not treat the request as presumptively the

proper award but must play a more neutral role, characterized as a fiduciary one, in deciding what fee is warranted. The Objectors argue that those conclusions may have a bearing on aspects of the fee analysis beyond the lodestar cross-check. Opening Br. at 48–53. On remand, the Claims Court should reconsider any parts of its analysis affected by the conclusions we have reached above.

## III

For the foregoing reasons, we vacate the fee award and remand for further proceedings consistent with this opinion.

Costs are awarded to the appellants.

**VACATED AND REMANDED**